820 So.2d 752 (2002)
Mansfield LANGSTON, Appellant,
v.
Randy BIGELOW, Agency Management Corporation and Those Certain Underwriters at Lloyd's, London Subscribing to Insurance Policy No. X11487, Appellees.
No. 2000-CA-01863-COA.
Court of Appeals of Mississippi.
June 25, 2002.
*754 J. Andrew Phelps, Marc L. Boutwell, Hattiesburg, attorneys for appellant.
William Graham, Hattiesburg, Cowles Edgar Symmes, attorneys for appellees.
Before KING, P.J., LEE, and IRVING, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY AND FACTS
¶ 1. This case stems from an insurance company's denial of a claim. A storm in March 1998 damaged the insured property, which was a commercial building located in Inverness, Mississippi, owned by the appellant, Mansfield Langston. Langston had purchased the building in January 1998 and had secured insurance coverage on the building from the appellees for a one-year policy to cover the property with a policy limit of $15,000. Following the storm, Langston reported that the building had sustained damage, and he submitted his insurance claim to the appellees. Randy Bigelow, one of the appellees named herein, inspected the damage and filed his report, whereupon the insurers notified Langston that his claim was being denied since the building showed no visible signs of damage to the exterior. Langston asked the insurer to reconsider his claim, and a second inspection followed. Bigelow and a contractor of Langston's choice inspected the building but could not find evidence of hail or wind damage.
¶ 2. Langston filed a lawsuit against the insurer in the Sunflower County Circuit Court alleging bad faith, breach of contract, breach of fiduciary duties, intentional and/or negligent infliction of mental and emotional distress and anguish, and negligence; he sought both actual and punitive damages, plus costs. Thereafter, the appellee/insurer filed a motion for summary judgment or, in the alternative, for partial summary judgment, seeking either dismissal with prejudice of all claims pursuant to M.R.C.P. 56 or partial summary judgment regarding Langston's claim to punitive damages for bad faith denial of his claim. In an order dated August 3, 1999, the circuit court granted the motion in part and denied in part, dismissing with prejudice Langston's claims for breach of fiduciary duty, negligence, intentional and/or negligent infliction of emotional distress and for punitive damages, and denied the motion concerning Langston's actual claim for recovery under the policy, finding that genuine issues of material fact did exist concerning Langston's right to recover under the policy.
¶ 3. Langston now appeals to this Court and argues that the trial court erred in granting the appellees' motion for summary judgment. We review the arguments presented and find no merit; thus, we affirm the decision of the lower court.

DISCUSSION

I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT *755 WITH REGARD TO THE APPELLANT'S CLAIM OF NEGLIGENCE, BREACH OF FIDUCIARY DUTY, INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND PUNITIVE DAMAGES?
¶ 4. Langston argues the trial court erred in granting summary judgment and dismissing with prejudice his claims against the appellees for negligence, breach of fiduciary duty, intentional and/or negligent infliction of emotional distress, and right to recover punitive damages. We first look to our standard of review concerning the granting of summary judgment.
This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made, that is, the nonmovant is given the benefit of the doubt. If the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.... In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law. Mere allegation or denial of material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment.
Benson v. National Union Fire Ins. Co. of Pittsburgh, 762 So.2d 795 (¶ 5) (Miss.Ct. App.2000) (citations omitted). Next, we look to each issue which Langston argues was improperly dismissed.

a. Negligence
¶ 5. Langston argues that all the elements of a negligence claim were present as to raise a genuine issue concerning his claim that the appellees were negligent: the insurance contract created a duty on the insurer's part to investigate and to pay just claims, the appellees breached this duty by not adequately and competently investigating his claim, and this episode resulted in damages to him, both physically and with regard to loss of his property and costs to repair. Specifically, Langston claims that Bigelow, the adjuster, was not qualified to inspect the premises, nor did Bigelow thoroughly investigate the claim by interviewing other tenants of the building concerning the storm.
¶ 6. We look to Bigelow's deposition testimony for his account of the steps he took to investigate Langston's claim. Bigelow testified as to his past experience over recent years in investigating claims and also recalled events the day he inspected Langston's building. Bigelow said that he visited Langston's building the day of the windstorm and had inspected the premises thoroughly, climbing onto the roof to investigate as well as viewing interior spaces where water damage was evident. Bigelow also took photographs of the interior and exterior of the building and also measured and made a diagram of the building for further study. After reviewing all the evidence he had gathered, Bigelow compiled his findings into a report wherein he recommended denial of the claim. He stated that he thought the water damage was unrelated to the storm, and the roof was deteriorated such that its condition prior to the storm was to blame for any damage which appeared.
*756 ¶ 7. From all the evidence before us, we find that since Bigelow testified that he thoroughly investigated the claim, any duty owed by Bigelow to Langston was not breached. Langston's mere difference of opinion with the court is not evidence of wrongdoing on the part of Bigelow.

b. Breach of Fiduciary Duty
¶ 8. Additionally, Langston argues that a fiduciary relationship existed between himself and the appellees. Langston argues that "trust" is inherent in the very nature of an insurance contract, since the carrier is to pay proceeds in the event of a loss that prompts the insured to pay the premium and since all proceeds remain in the control of the carrier, leaving the insured completely dependent upon the carrier to pay at the time the insured suffers a loss. Langston claims that since he and the appellees were in a fiduciary relationship that the appellees are obliged to conduct an adequate investigation and to refrain from wrongfully denying the claim. Langston argues that Bigelow was not properly trained to investigate the claim, and this shows that the appellees breached their fiduciary duty to him.
¶ 9. We review relevant caselaw to determine whether the insurer owed any special duty to Langston by virtue of their relationship. "Implicit in every contract of insurance is a covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefit of the agreement ...." Hartford Accident and Indem. Co. v. Foster, 528 So.2d 255, 281 (Miss.1988). As further described herein, we find that the appellees did not breach their covenant of good faith and fair dealing.
A fiduciary duty must exist before a breach of the duty can occur. "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed." Additionally, a confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction with a stranger.
Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 83 (Miss.1991) (citations omitted). In Mississippi, the purchase of insurance is deemed to be an arms' length transaction. Estate of Jackson v. Mississippi Life Ins. Co., 755 So.2d 15 (¶ 36) (Miss.Ct.App.1999). The Fifth Circuit has also spoken concerning Mississippi law on this point:
Under Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract .... Only when a third party relationship exists between the insurance company and the insured does the insurance company acquire "control" of the litigation which gives rise to a fiduciary relationship.
Gorman v. Southeastern Fidelity Ins. Co., 621 F.Supp. 33, 38 (S.D.Miss.1985).
¶ 10. Langston claims that the trust and dependence with regard to insurance is inherent in the very nature of the contract, thus creating the special fiduciary relationship. Langston also states in his brief that it is the trust in the carrier to pay the proceeds in the event of a loss that prompts the insured to pay the premium, *757 and this trust is so great that the proceeds of the insurance policy remain in the complete control of the carrier rather than in an account controlled by the insured or a disinterested party. We find, though, that Langston is mistaken in his belief that this mere contractual obligation on the part of the insurer to pay a claim creates any special trust or fiduciary relationship. As stated before, Langston's purchase of insurance was an arms' length transaction, not giving rise to any special relationship. We find no error in the trial court's granting summary judgment on the issue of breach of fiduciary duty.

c. Emotional Distress
¶ 11. To prevail on a claim for intentional infliction of emotional distress, "the conduct must have been `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Brown v. Inter-City Fed. Bank for Sav., 738 So.2d 262(¶ 9) (Miss.Ct. App.1999). In support of his claim for damages resulting from intentional and negligent infliction of emotional distress, Langston asserts that the ordeal made him "very upset" and that he suffered "restless nights" and sleep problems for a year, and this entitles him to damages. The supreme court has held that a mere showing of loss of sleep is insufficient to sustain such a claim for emotional distress. See Adams v. U.S. Homecrafters, 744 So.2d 736(¶ 22) (Miss.1999); Morrison v. Means, 680 So.2d 803, 807 (Miss.1996). Langston has shown no grounds to recover for any infliction of emotional distress.

d. Punitive Damages
¶ 12. Concerning the claim for punitive damages, Langston argues that the insurer's reckless disregard for his rights rises to the level of an independent tort justifying punitive damages, and the trial court erred in dismissing his claim.
¶ 13. In Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239 (Miss.1977), the supreme court thoroughly laid out the standard by which punitive damages may be awarded in an insurance case.
Exemplary or punitive damages are those, of course, which are in addition to the actual or compensatory settlement. They are granted in the nature of punishment for the wrongdoing of the defendant and as an example so that others may be deterred from the commission of similar offenses thereby in theory protecting the public. The basis in awarding such damages to the injured party is that of rewarding an individual for public service in bringing the wrongdoer to account .... Punitive damages may be recovered for a willful and intentional wrong, or for such gross negligence and reckless negligence as is equivalent to such a wrong .... In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. With reference to punitive damages in suits for breach of contract ... Punitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort.
Veal, 354 So.2d at 247 (citations omitted). Additionally, we note that, "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed `with caution and within narrow limits.'" Life & Cas. Ins. Co. of Tenn. *758 v. Bristow, 529 So.2d 620, 622 (Miss.1988). From the evidence presented, we find that Bigelow had ample reason to deny Langston's claim, and his actions in no way give rise to a claim for punitive damages.
¶ 14. We have reviewed the evidence in a light most favorable to the appellees and can find no error in the trial court's granting of summary judgment as to the issues raised on appeal. Therefore, we affirm.
¶ 15. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.