856 So.2d 646 (2003)
Pearlie THOMAS, Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY a/k/a State Farm General Insurance Company, Appellee.
No. 2002-CA-00656-COA.
Court of Appeals of Mississippi.
June 24, 2003.
Rehearing Denied September 23, 2003.
*647 W. Dean Belk, Indianola, attorney for appellant.
Bradley Barron Vance, William M. Dalehite, Jackson, attorneys for appellee.
Before McMILLIN, C.J., THOMAS, LEE and IRVING, JJ.
THOMAS, J., for the court.
¶ 1. Pearlie Thomas was shot by her cousin, Bessie Mallard. Thomas sued Mallard for injuries sustained by gunshot. A default judgment was entered and a hearing was held to determine damages. Thomas was awarded $473,067.54 in compensatory damages and $70,000 in punitive damages. Thomas then filed a garnishment action against State Farm to recover from Mallard's homeowner's insurance policy. The court ruled in favor of State Farm's motion for summary judgment. Aggrieved Thomas asserts the following on appeal:
I. THE EXCLUSION RELATING TO INTENTIONAL HARM IS NOT APPLICABLE HERE BECAUSE DEFENDANT MALLARD DID NOT INTEND TO HARM THE PLAINTIFF.
II. ANY LACK OF NOTICE TO STATE FARM IS NO BASIS FOR BARRING RECOVERY UNDER THE INSURANCE POLICY.

FACTS
¶ 2. On April 4, 1996, Bessie Mallard shot her cousin, Pearlie Thomas, in the abdomen. Mallard later pled guilty to aggravated assault and was sentenced to fifteen years suspended and five years of supervised probation. Thomas then sued Mallard for damages sustained from the gunshot. A default judgment was entered on November 16, 1997, as Mallard never answered the complaint. The hearing to determine damages was held on May 13, 1999; Mallard failed to attend. Thomas was awarded $543,067.54 in medical expenses, compensatory damages, and punitive damages.
¶ 3. Soon after the hearing to determine damages, Mallard filed for bankruptcy, and Thomas discovered that Mallard had a homeowner's insurance policy after a hearing in a bankruptcy proceeding uncovered that Mallard owned a home and lived in Leflore County. Thomas then searched the records in Leflore County and discovered a deed to a mortgaged property on which Mallard had homeowner's insurance. Thomas filed a garnishment action against State Farm Fire and Casualty Company, the insurer. State Farm refused to pay pursuant to an exclusionary provision that excluded from coverage intentional acts done by the insured. State Farm also asserted as a defense the fact that Mallard did not give notice of the claim to State Farm until years after the incident; a default judgement had already been entered against Mallard. The trial court granted summary judgement in favor of State Farm.
¶ 4. The clause that protects the insured from personal liability states:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will: 1) pay up to our limit of liability for the damages for which the insured is legally liable.
The exclusionary provision that State Farm relies on provides that coverage does not apply to bodily injury "to any person which is the result of willful and malicious acts of an insured."
¶ 5. Mallard pled guilty to the aggravated assault charge and at the sentencing hearing Thomas told the judge about her *648 medical bills and how Mallard should have to pay. There was obvious ill will between the women at that point. However, a reading of the depositions taken by State Farm in April of 2001 revealed a totally different scenario. Both women agreed at that time that Mallard did not intend to harm Thomas. Thomas even stated that she may have accidentally hit Mallard's hand which held the gun when she turned to go back inside. Clearly, both of these women want State Farm to pay.

ANALYSIS

I. IS THE EXCLUSION RELATING TO INTENTIONAL HARM APPLICABLE HERE?
¶ 6. Thomas contends that the trial court erred in its finding that Mallard intended to harm Thomas when it granted State Farm's motion for summary judgment. Thomas asserted for the first time in the garnishment action that Mallard did not intentionally shoot her. She previously asked for and received punitive damages at the damages hearing after a default judgment was entered against Mallard. She further contends that although the trial court conducting the damages hearing found that Mallard acted intentionally and therefore awarded punitive damages, the court never determined that Mallard intended to harm Thomas.
¶ 7. This Court conducts a de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. Langston v. Bigelow, 820 So.2d 752, 755(¶ 4) (Miss.Ct. App.2002). The evidence must be viewed in the light most favorable to the party against whom the motion has been made, that is, the non-movant is given the benefit of the doubt. Id. If the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Id. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. Id. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law; mere allegation or denial of material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment. Benson v. National Union Fire Ins. Co. of Pittsburgh, 762 So.2d 795(¶ 5) (Miss.Ct.App.2000); Langston v. Bigelow, 820 So.2d 752, 755(¶ 4) (Miss.Ct.App.2002).
¶ 8. The interpretation of insurance policy language is a question of law. Johnson v. Preferred Risk Auto. Ins. Co., 659 So.2d 866, 871 (Miss.1995). Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. Paul Revere Life Ins. Co. v. Prince, 375 So.2d 417, 418 (Miss.1979). In Mississippi, "[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." Lewis v. Allstate Ins. Co., 730 So.2d 65, 68(¶ 12) (Miss.1998); Coleman v. Sanford, 521 So.2d 876, 878 (Miss.1988).
¶ 9. The supreme court has previously addressed whether an intentional acts exclusion provision in a policy precluded coverage when an insured shot an individual and claimed that the shooting was not intentional. Southern Farm Bureau Cas. Ins. Co. v. Allard, 611 So.2d 966, 968 (Miss.1992). In Allard, the personal injury suit was resolved prior to the suit for declaratory judgment. Id. at 967. The jury found that Allard, the insured, did not intend to shoot Rowland, the victim. The homeowner's policy covering Allard contained *649 an exclusion to liability coverage stating that coverage "does not apply to bodily injury or property damage which is expected or intended by the insured." Id. at 968. The Court noted that under Mississippi law, "`[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it.'" Id. (quoting Coleman, 521 So.2d at 878). Without determining whether the policy language was ambiguous, the court relied on the jury's conclusion that, based on the evidence, Allard did not intend to shoot or hit Rowland; rather, Allard only intended to stop Rowland by shooting in front of him. Id. at 968-69.
¶ 10. The distinguishing factors between Allard and the case sub judice are that the intentions of the shooter in Allard were never contradicted by the shooter or the victim. Thomas has changed her story regarding the intention of Mallard after asking for punitive damages. Punitive damages can only be awarded for actual malice, i.e., intentional conduct. At the very least, Mallard believed that the consequences which occurred were substantially certain to occur.
¶ 11. "When collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." Dunaway v. W.H. Hopper & Associates, Inc., 422 So.2d 749, 751 (Miss.1982). Strict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action. Smith v. Malouf, 826 So.2d 1256, 1260(¶ 13) (Miss.2002); McIntosh v. Johnson, 649 So.2d 190, 193-94 (Miss. 1995), overruled on other grounds by Norman v. Bucklew, 684 So.2d 1246 (Miss. 1996); Johnson v. Howell, 592 So.2d 998, 1002 (Miss.1991); Walton v. Bourgeois, 512 So.2d 698, 701 (Miss.1987). In Coral Drilling, Inc. v. Bishop, 260 So.2d 463, 465-66 (Miss.1972), the plaintiff stated in one suit one fact and in another suit a different fact regarding the same thing. Id. The courts will not permit litigants to solemnly affirm that a given state of facts exists from which they are entitled to a particular relief and then afterwards affirm a contrary state of facts from which they are entitled to inconsistent relief. Id. With no genuine issue present, Rule 56(c) of the Mississippi Rules of Civil Procedure controls, and the summary judgment must be affirmed. Hardy v. Brock, 826 So.2d 71, 76(¶ 28) (Miss.2002).
¶ 12. At Mallard's sentencing hearing on September 9, 1997, Thomas testified describing her recollection as to the facts surrounding the shooting. She attested that she did not know what was going on and that when she went outside to talk to Mallard, Mallard was holding a gun in her hand. Thomas said Mallard told her the reason why Mallard was going to shoot her and then she did. She further described how the bullet "tore her up" inside. When questioned by the court as to what precipitated the incident Thomas explained that it was understood, afterwards, that it was over some missing jewelry.
¶ 13. Thomas was later deposed by State Farm in the garnishment action. She testified, "Bessie told me she wanted to talk to me. I can't remember about what, but it was something that her brother had done, whatever. Anyway, it ended up to some way we was talking and the gun went off. That is the only thing that I can remember. I ran in the house." Thomas further described what took place at the moment the gun was fired, "I don't know, my hand hit her's or something and it went off." This is quite a different story than the one portrayed by Thomas prior to *650 discovering the exclusion clause in the insurance policy.
¶ 14. Thomas never once, prior to the garnishment action, contended that Mallard did not shoot her intentionally. Thomas now contends that the harm which resulted was not that which was intended and therefore the exclusion should not apply. Given the prior criminal and civil proceedings wherein Thomas alleged a malicious and intentional assault upon her and Mallard's acknowledging the same, neither the law nor logic shall allow Thomas or Mallard to proceed as they desire here.
¶ 15. As stated above, when reviewing a grant of summary judgment this Court must be sure that the trial court viewed the evidence in the light most favorable to the party against whom the motion has been made, that is, the non-movant is given the benefit of the doubt. In the case sub judice Thomas is barred from asserting a different set of facts than those which she pled and testified to under oath previously. Therefore, the trial court had only one light with which to view the evidence and that is Thomas' previous assertions and pleadings as to the facts and evidence. Review of the remaining issue is not required as it has been determined that the exclusion provision applies and coverage does not exist under the policy.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.