**VOYAGER LIFE INSURANCE COMPANY Plaintiff**

**v.**

**Gussie CALDWELL, Clenton Reese, Mary Reese, and Thelma Walker Defendants**

**No. CIV.A.4:03–CV–158BN.**

United States District Court, S.D. Mississippi, Eastern Division.

Jan. 11, 2005.

Walter D. Willson, Jackson, MS, for Plaintiff Voyager Life Insurance Company.

Harry McCumber, Jackson, MS, For Defendants.

### OPINION AND ORDER

BARBOUR, District Judge.

Before the Court is the Second Motion of Plaintiff Voyager Life Insurance Company for Summary Judgment. In the Motion, Plaintiff seeks to compel arbitration pursuant to § 4 of the Federal Arbitration Act, and to stay state court proceedings brought by Defendants against Plaintiffs in Noxubee County, Mississippi. Having considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority, the Court finds that the Motion is taken and should be granted.

### I. Background and Procedural History

Pioneer Credit Company ("Pioneer") extended consumer loans to Defendants Gussie Caldwell, Clenton Reese, Mary Reese, and Thelma Walker (collectively "Defen-

dants"). Insurance products were included as a portion of the loans. Defendants were charged for these insurance products in association with the loans. Plaintiff Voyager Life Insurance Company issued these insurance products, which include credit life and credit disability insurance.

Defendants argue Pioneer and Plaintiff Voyager Life fraudulently bundled the insurance products with the consumer loans. Defendants assert the bundling was fraudulent because Plaintiffs purportedly caused Defendants to believe they were required to purchase the insurance products in order to obtain the loans, and that this was not so. Therefore, Defendants argue they were wrongfully charged for insurance products which were never required.

Based on the above summary of facts, Defendants filed the underlying suit in this action in the Circuit Court of Noxubee County, Mississippi, on February 20, 2002, as a consumer fraud action. Plaintiff filed the Complaint in this Court to compel Defendants to arbitrate the claims asserted by them in the state court suit.

In connection with the loans Pioneer extended Defendants, each Defendant signed a document entitled *"ARBITRATION AGREEMENT"* which provides

> ...all disagreements, controversies, claims, counter claims, and/or disputes (collectively 'disputes') between the parties arising out of, in connection with, or relating to, any past, present and/or future loan or other relationship between Lender and Debtor, which dispute(s) cannot be resolved solely among the parties, shall be resolved by *final binding arbitration...*

Arbitration Agreement, attached as Exhibit "C" to Plaintiff's Second Motion for Summary Judgment, dated July 13, 2004 (emphases in original).

Plaintiff is a non-signatory third party to this arbitration agreement. Plaintiff argues that even though Defendants did not enter into this agreement with Plaintiff, the arbitration agreement nevertheless requires Defendants to arbitrate their claims against Plaintiff.

As noted above, this is Plaintiff's Second Motion for Summary Judgment. The Court denied Plaintiff's first Motion for Summary Judgment without prejudice so that Defendants could conduct additional discovery. The Court stated,

> Defendants contend that discovery is required to aid in proving the third issue, whether any rule of Mississippi contract law renders the arbitration clauses unenforceable. Specifically, Defendants allege that they were fraudulently induced into entering the contracts containing the arbitration clauses. The Court finds that the discovery process may aid Defendants in their quest to prove fraud in the inducement of the subject contracts.

Opinion and Order, p. 3, dated March 10, 2004. Defendants failed to conduct any discovery during the extended time set forth by the Court. Therefore, at the expiration of the designated time for additional discovery, Plaintiff brought its Second Motion for Summary Judgment.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. Analysis

There are three primary issues in this case. First, the Court must determine whether the Federal Arbitration Act, 9 U.S.C. § 2, applies. Second, the Court must determine if collateral estoppel or res judicata bars Defendants claims against Plaintiff in the underlying state court action. Third, if collateral estoppel or res judicata does not apply, the Court must determine whether the arbitration provision in the contract is enforceable.

## III.A. Application of the Federal Arbitration Act, 9 U.S.C. § 2

Defendants first argue that the Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"), does not apply in this instance. Defendants make an issue of the application of the FAA because of its presumption of the validity of an arbitration agreement. The FAA provides

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy *thereafter arising out of such contract or transaction,* or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* (emphasis added). There is no question that the controversy in this case directly arises out of the contract, as it concerns the actions of Pioneer and Plaintiff Voyager when Pioneer extended consumer loans to Defendants, and those loans are directly governed by the contract. Moreover, while the FAA does require an independent basis for subject matter jurisdiction, *Ballard v. Illinois Central R. Co.,* 338 F.Supp.2d 712, 715 (S.D.Miss.2004)(Bramlette, J.), that requirement is met in this instance as there is complete diversity between the parties

and the amount in controversy is greater than $75,000.[1]

■ Nevertheless, Defendants argue the FAA does not apply for the following reasons:

> The FAA was passed pursuant to Congress' commerce clause power. Therefore, in order for the FAA to be applicable, the regulated activity at issue must 'substantially affect interstate commerce.' In a recent line of cases, the United States Supreme Court, in an apparent trend of striking a balance between states' rights and federal rights, has narrowed the scope of the commerce clause. As such, the appropriate inquiry in this matter is whether the transactions at issue 'substantially affects [sic] interstate commerce,' in the aggregate, enough to touch or invoke Congress' commerce clause powers. Furthermore, Plaintiff has the clear burden of establishing the requisite nexus.
>
> The transactions at issue do not affect interstate commerce and clearly do not 'substantially affect interstate commerce' in the aggregate....

Defendants' Consolidated Response and Memorandum to Plaintiff's Motion for Summary Judgment and for Stay of Underlying Action, pp. 3–4, dated July 20, 2004.

Defendants cite no authority for why the FAA would not apply in this instance as an extension of the commerce clause power of the United States Constitution. Defendants appear to allude to cases such as *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)(holding that possession of a gun in a local school zone was not an economic activity that substantially affected interstate commerce, and therefore Congress could not regulate firearm possession in those areas). While cases such as *Lopez* have set limits upon the commerce clause power of Congress, there is no indication in those cases or in any others that Congress (1) did not intend to make the FAA apply to facts such as these or (2) that it does not have the power to carry out this intent. Rather, it seems fairly plain that the entire purpose of Congress when enacting the FAA was to enforce arbitration agreements such as the one in this case, which do substantially affect interstate commerce in the aggregate. The issue as to the enforceability of the arbitration agreement by Voyager, a non-signatory, is discussed infra in Section III.D.

### III.B. Introduction to Collateral Estoppel/Res Judicata and the Enforcement of Arbitration Agreements by Non–Signatory Parties

Plaintiff offers two theories as to why it is entitled to enforce the arbitration agreement against Defendants. First, Plaintiff argues collateral estoppel or res judicata prevents Defendants from escaping the ambit of the arbitration provision. Second, Plaintiff argues that, should this Court not find that collateral estoppel or res judicata requires arbitration of Defendants' claims against Plaintiffs, this Court should find on the merits that the arbitration agreement requires the arbitration of the claims.

The United States Court of Appeals for the Fifth Circuit stated the standard for determining whether a claim is subject to arbitration as follows:

---

1. Defendants are each residents and citizens of Mississippi. Plaintiff is a corporation organized and existing under the laws of the State of Texas, and its principal place of business is in Texas. Complaint and Petition to Compel Arbitration, pp. 2–3, originally filed in the United States District Court for the Northern District of Mississippi, and subsequently filed in the United States District Court for the Southern District of Mississippi and entered as docket entry no. 1, dated August 2, 2002.

The first question to be addressed in adjudicating a motion to compel arbitration under the FAA is 'whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'

*American Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 537 (5th Cir.2003)(quoting *Webb v. Investacorp,* 89 F.3d 252, 258 (5th Cir.1996)). Only the first consideration, whether there is a valid agreement, is at issue in this case. Thus, if collateral estoppel or res judicata does not bar Plaintiff's claims, the Court must determine whether or not the arbitration agreement is valid.

### III.C. Collateral Estoppel and/or Res Judicata

Plaintiff first argues that collateral estoppel and/or res judicata bars Defendants' claims. Plaintiff argues that one or both of these theories should apply in this instance because on June 30, 2003, Judge Glen H. Davidson of the United States District Court for the Northern District of Mississippi granted the Complaint of Pioneer to Compel Arbitration of Defendants' claims against Pioneer. Pioneer obtained this ruling from Judge Davidson amidst the odd procedural background to this case. This background warrants a brief recitation in order to understand why the Complaint of Pioneer to Compel Arbitration was in front of Judge Davidson, and, as such, why it may serve as a basis for

Plaintiff's collateral estoppel and/or res judicata arguments.

Plaintiffs filed the underlying state court suit against Pioneer and Voyager in the Circuit Court of Noxubee County, Mississippi, on February 20, 2002.[2] On July 11, 2002, both Pioneer and Voyager removed the underlying state court action to the United States District Court for the Southern District of Mississippi, where the case was assigned to Judge Tom S. Lee under civil action no. 4:02–CV–279.[3] On August 2, 2002, Voyager filed a Complaint to Compel Arbitration in the United States District Court for the Northern District of Mississippi, which was assigned to Judge Davidson under civil action no. 1:02–CV–282. Later, on April 2, 2003, Pioneer filed a separate Complaint to Compel Arbitration.[4] On March 25, 2003 (a date previous to the day on which Pioneer filed its Complaint), Judge Davidson issued an order which transferred the action involving the Complaint of Voyager to Compel Arbitration (1:02–CV–282) to the Southern District, so that the action involving the Complaint of Voyager to Compel Arbitration could be consolidated with the underlying state court suit which had been removed to federal court and was being heard by Judge Lee (4:02–CV–279). Judge Davidson transferred this action on the basis of the "first-to-file" rule, as Voyager had filed its removal in the Southern District before it had filed its Complaint to Compel Arbitration in the Northern District. Judge Davidson's attempt at efficiency was unintentionally thwarted. The Southern District did not receive the transferred action

---

**2.** Also named in the underlying state court suit were resident non-diverse defendants.

**3.** Mississippi is divided into two federal judicial districts, each of which is composed of several divisions. Noxubee County is in the Eastern Division of the Southern District. Hence, the underlying state court action was properly removed to the Southern District.

**4.** The Northern District had proper jurisdiction to entertain the Complaints to Compel Arbitration as two of the plaintiffs in the underlying state court suit were residents of Clay County, and two plaintiffs were residents of Monroe County. Both Counties are within the Eastern Division of the Northern District.

of Voyager until April 23, 2004. By that time, Judge Lee had already remanded the underlying state court action against Voyager and Pioneer to the Circuit Court of Noxubee County.[5] Thus, it was impossible to consolidate the action in front of Judge Lee (4:02–CV–279) with the action of Voyager which had been transferred from the Northern District (1:02–CV–282). The action which had been transferred was then given a new civil action no. designation, 4:03–CV–158, and was assigned to the undersigned. Recognizing that it was impossible to consolidate the actions pursuant to Judge Davidson's order, the undersigned issued an Order on July 15, 2003, which set aside the consolidation order of Judge Davidson. All of the above meant that, at this point in time, the two outstanding motions of significance, the motions of Voyager and Pioneer for summary judgment to compel arbitration, were in front of two different district judges in two different districts, even though they contain virtually identical issues and facts. The motion of Voyager was and is in front of the undersigned. The motion of Pioneer was decided by Judge Davidson in an order issued on June 30, 2003.[6] It is because of this order that Plaintiff argues that collateral estoppel and/or res judicata applies.

Defendants failed to respond to Plaintiff's collateral estoppel argument in their Response to Plaintiff's Second Motion for Summary Judgment, filed July 20, 2004. Nevertheless, the Court will consider the merits of Plaintiff's contention.[7]

"When collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." *Dunaway v. W.H. Hopper & Associates, Inc.*, 422 So.2d 749, 751 (Miss.1982). Moreover, "[s]trict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action." *Thomas v. State Farm Fire and Cas. Co.*, 856 So.2d 646, 649 (Miss.App. 2003), *cert. denied* 866 So.2d 473(citing *Smith v. Malouf*, 826 So.2d 1256, 1260 (Miss.2002)).

The pertinent collateral estoppel issue in this case is whether strict identity of the parties is present between this action and the former action before Judge Davidson, and, if not, whether Plaintiff is in privity with Pioneer, a party to the prior action.

Plaintiff raises an interesting argument. It argues that a strict identity of the parties is present. Plaintiff, in its Motion for Summary Judgment, states "[t]he Order issued by Judge Davidson compelled to

---

**5.** Judge Lee remanded this action on March 25, 2003, the very day on which Judge Davidson transferred the action before him.

**6.** As noted above, Judge Davidson transferred the action involving Voyager on the basis of the "first-to-file" rule. As such, it is unclear why the action involving Pioneer was not also transferred to the Southern District, as Pioneer joined Voyager in the removal of the underlying action to the Southern District before Pioneer filed its Complaint to Compel Arbitration in the Northern District. Thus, the "first-to-file" rule would have applied

with equal force to Pioneer. The Court does note that on March 25, 2003, the day on which the Voyager action was transferred, Pioneer had not yet filed its Complaint to Compel Arbitration in the Northern District. Hence, as of that date, the Voyager action could not have been transferred along with the Pioneer action, as the Pioneer action did not yet exist. Pioneer did not file its Complaint until April 2, 2003.

**7.** Because the Court finds that collateral estoppel bars Defendants claims against Plaintiff, it does not address res judicata.

arbitration all claims asserted by the Defendants, *including those against Voyager.* The Complaint that was filed by Pioneer specifically requested the Court compel to arbitration the Defendants [sic] claims against Voyager. *See* Paragraph 3 of Pioneer's Complaint, attached hereto as Exhibit 'B.'" Second Motion for Summary Judgment, p. 2, ¶ 5 (emphasis added). That is true, at least in part. Pioneer, in its Complaint before Judge Davidson, did explicitly state that "Voyager is also entitled to compel arbitration" and that "Plaintiffs further request that this Court enter an order enjoining Defendants from prosecuting any and all claims against Pioneer, Voyager...in the underlying action...." Complaint for Order Compelling Arbitration, pp. 2 & 7, ¶¶ 3 & 21, respectively, attached as Exhibit "B" to Second Motion for Summary Judgment. *Id.*, p. 7, 21.

Judge Davidson, in his order dated June 30, 2003, attached as Exhibit "A" to the Second Motion of Plaintiff for Summary Judgment, does appear to compel all of Defendants' claims against the Plaintiff and other Defendants in the state court action. The order states "*all* proceedings in the case of *Caldwell; et al. v. Pioneer Credit Co.; et al.* [the underlying state court action], Civil Action No.2002–86–CV2, Circuit Court of Noxubee County, Mississippi, are hereby STAYED." Order (emphasis added). Because the Order uses the word "all," it does appear the order speaks to Defendants' claims against Plaintiff Voyager, as well as Defendants' claims against Pioneer, the party who brought the Complaint before Judge Davidson.

Herein lies the difficulty. Voyager, the Plaintiff in this action, did not join in the Complaint of Pioneer. It did not sign that Complaint, and its attorneys did not sign that Complaint. The Complaint before Judge Davidson was submitted by an entirely different party, Pioneer, and an entirely different set of attorneys. The sole fact that Pioneer made arguments on Plaintiff's behalf makes it difficult for this Court to definitively find that a strict identity of the parties is present, because the Plaintiff did not even join in that Complaint. Regardless, the Court need not address this issue, and only discusses the issue to recognize it.[8] It is unnecessary to resolve the issue because privity of the parties is present, which suffices for a finding of collateral estoppel. *Thomas,* 856 So.2d at 649.

The definition of privity within the context of collateral estoppel has proved to be a fairly elusive concept. "There is no prevailing definition of privity that can automatically be applied to all cases." *Olivarez v. Broadway Hardware, Inc.,* 564 S.W.2d 195, 199 (Tex.Civ.App.—Corpus Christi 1978). "Privity' is ... a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified.'" *Little v. V & G Welding Supply, Inc.,* 704 So.2d 1336, 1339 (Miss.1997). Furthermore,

> Although the concept of privity has frequently been called upon as an aid in determining who should be bound by a judgment, privity is not of much use as an analytical tool. If any generalization about collateral estoppel is valid, it is that a court which is satisfied that the first litigation provided substantial protection of the rights and interests of the parties sought to be bound in subse-

---

8. The Court notes that because Judge Davidson's order does in fact stay all proceedings in the state court action, including Defendants' claims against Plaintiff, then this entire cause is redundant and unnecessary save to clarify any misunderstandings that might exist over the effect of the previous order. Plaintiff could have avoided this cause by simply enforcing Judge Davidson's order in state court.

quent litigation will find that the parties have been 'in privity.' *McFadden v. McFadden,* 239 Or. 76, 396 P.2d 202 (1964).

> To determine the question of privity, courts must consider the claims that were litigated in the previous suit and the relationship of the new defendant in the second suit to the former defendants. *Olivarez v. Broadway Hardware, Inc.* 564 S.W.2d, (Tex.Civ.App.-Corpus Christi 1978) *writ refused n.r.e.* (July 26, 1978).

47 Am.Jur.2d Judgments § 663. And,

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The statement that a person is bound ... as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by ... all or some of the rules of *res judicata* by way of merger, bar or collateral estoppel.

*State v. Pittman,* 744 So.2d 781, 785 (Miss. 1999) (quoting *Little v. V. & G Welding Supply, Inc.,* 704 So.2d 1336 (Miss.1997), which quotes the comment to Section 83 of the Restatement of Judgments).

Voyager, the Plaintiff in this action, and Pioneer, the Plaintiff before Judge Davidson, share a close relationship. Pioneer included the products of Voyager in its consumer loans. When Defendants filed suit, they sued both Pioneer and Voyager, together. Both Pioneer and Voyager rely on the same arbitration agreement to compel arbitration. When Pioneer made its arguments to compel arbitration in front of Judge Davidson, it not only argued that Defendants' claims against Pioneer should be compelled to arbitration, but also that Defendants' claims against Voyager should be compelled to arbitration. As such, Pioneer sought to protect Voyager's rights and interests when it argued in front of Judge Davidson, and it did so successfully, as evidence by the fact that Judge Davidson stayed all proceedings in the underlying state court action. Obviously, Plaintiffs were present before Judge Davidson to protect their rights and interests, and there are no new circumstances or facts before this Court which would suggest that Defendants should be given a further chance to litigate any arbitration issues with respect to Voyager. Stated another way, the issues related to arbitration between Defendants and Pioneer are the same as the issues related to arbitration between Defendants and Voyager, and there are no new "interests" at stake in this matter to suggest that Voyager and Pioneer were not in privity with one another. Therefore, the Court finds that Voyager was privity with Pioneer.

This finding of privity between Pioneer and Plaintiff is supported by Defendants' own pleadings before the Court. In Defendants' Complaint in the underlying state court action they explicitly state,

> Defendants entered into a civil conspiracy with each other to procure consumer loans with the Plaintiffs, to refinance existing loans with the Plaintiffs and other consumers and to sell insurance that was unnecessary and at an exorbitant, unfair and discriminatory premium far in excess of the market rate.

> All Defendants entered into a scheme to defraud or injure the Plaintiffs and other consumers as described herein.

Complaint, p. 29, ¶ 96 & 97, attached as Exhibit "E" to Complaint and Petition to Compel Arbitration.

Because Voyager and Pioneer were in privity with one another, the Court finds that Judge Davidson's order collaterally estops Defendants from re-litigating any arbitration issues with respect to Voyager.

## III.D. Enforcement of Arbitration Agreement by a Non–Signatory Party

In the alternative, the Court finds that based upon *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524 (5th Cir.2000), the claims of Defendants Gussie Caldwell, Mary Reese, and Thelma Walker against Plaintiff should be subject to arbitration and that, with respect to those Defendants, the arbitration agreement is valid. Only with respect to Defendant Clenton Reese ("Reese") is there an issue of material fact which prohibits a finding of summary judgment in this instance.

In *Grigson* the United States Court of Appeals for the Fifth Circuit stated

Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.* Otherwise the arbitration proceedings between the two signatories

would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson,* 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999)) (emphasis in original).

██ Here, both circumstances are present. Each of Defendants' claims against Plaintiff "makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Grigson,* 210 F.3d at 527. Thus, the first circumstance is present. As to the second circumstance, Defendants have "raise[d] allegations of substantially interdependent and concerted misconduct by both the nonsignatory [Plaintiff] and one or more of the signatories [Pioneer] to the contract." This is apparent based on the fact that Defendants' claim Plaintiff and Pioneer entered into a civil conspiracy.

██ Defendants argue that despite *Grigson,* the Court should not compel arbitration because "[Defendants] were fraudulently induced into signing the arbitration clauses and Plaintiff was a non-signatory to these clauses." Defendants' Response and Memorandum to Plaintiff's Second Motion for Summary Judgment and For Stay of Underlying Action, dated July 20, 2004. Defendants rely on authority which states that generally applicable contract defenses, such as fraud, duress, and unconscionability, may be applied to invalidate an arbitration clause without contravening section 2 [of the Federal Arbitration Act]." [9] *E.g., Doctor's Associates, Inc. v.*

---

**9.** While fraud and unconscionability can be two separate legal theories, in this case Defendants implicitly conflate the two theories by arguing that the arbitration agreement is procedurally unconscionable because it was procured by fraud. Procedural unconscionability occurs when Plaintiff proves "lack of

knowledge, lack of voluntariness, inconspicious spirit, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Blount, et al. v. National Lending Corp., Inc.,* 108 F.Supp.2d

*Casarotto*, 517 U.S. 681, 682, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Using this authority, Defendants state

> ...There is sufficient evidence in the case at hand that the agreements to arbitrate resulted from fraud thereby dictating revocation of the arbitration agreements.
>
> When Defendants took out the loans that are the subject of this case, Plaintiff knew they were average customers, unsophisticated in financial and legal matters. Plaintiff's employees and/or agents told Defendants that the documents they were signing consisted of the loan papers and the insurance papers required for the loan. At no time was the arbitration agreement ever explained to Defendants. Also, Defendants never contemplated that a fraud was being perpetrated upon them by the Plaintiff when they signed the credit documents, therefore, they never intended to allow the Plaintiff to have the protection of the arbitration clauses.
>
> At no time did Plaintiff inform Defendants that they were signing away their constitutional rights to a jury trial.[10] Accordingly, Plaintiff's agents knowingly, willfully and fraudulently deceived Defendants concerning not only the requirement of credit insurance, but also the very existence of the arbitration agreements.

Defendants Response, p. 7. Defendants, in their briefings before this Court, offer no evidence concerning their unsophisticated status. Rather, they simply state in conclusory terms that a "fraud" was committed because they are unsophisticated.

This allegation raises two points. The first is the arbitration agreement itself, which was plainly apparent in the contract. The second is the argument made before Judge Lee, of the United States District Court for the Southern District of Mississippi,[11] concerning these very same parties in the context of a motion to remand, when the Defendants argued that all or at least some of them could not sufficiently read.

As to the arbitration agreement itself, it was plainly apparent in the contract. In the contract is a separate page entitled, in all capital letters which are underlined and in bold, *"ARBITRATION AGREEMENT."* Contract, attached as Exhibit "C" to Plaintiff's Second Motion for Summary Judgment. The entire page is dedicated to explaining the terms of the agreement. Then, at the bottom of the page, is an underlined paragraph immediately above the place for signature which states

> *Debtor and Lender have read this Agreement, understand its provisions, and agree to be bound by each and every term hereof. Lender has provided Debtor the opportunity to read the AAA rules before Debtor signed this Agreement. Debtor acknowledges receiving a signed copy of the Agreement on the date below.*

666, 669 (S.D.Miss.2000) (quoting *Nauru Phosphate Royalties v. Drago Daic Interests*, 138 F.3d 160, 165 (5th Cir.1998)), *cert. denied* 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998).

**10.** The Court does not address this assertion because, as stated in *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 455 (Miss.2004),

> In addressing the constitutional right to a jury trial, the court in *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819, 834 (S.D.Miss.

2001), *aff'd mem.*, 34 Fed. Appx. 964 (5th Cir.2002), stated that the Constitution does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.

**11.** This case was originally assigned to Judge Lee before it was reassigned to the undersigned.

*Id.* (emphasis in original). On the reverse side of the page is another pertinent paragraph. It reads

> DEBTOR(S) UNDERSTAND AND AGREE THAT THE *'ARBITRATION OF DISPUTES'* CLAUSE ON THE REVERSE SIDE HEREOF IS A PART OF THE PROMISSORY NOTE HEREOF AS IF FULLY SET FORTH AT THIS POINT, AND THAT IN SIGNING THE PROMISSORY NOTE DEBTOR(S) AGREE TO BE BOUND BY THE PROVISIONS OF THE *'AR-BITRATION OF DISPUTES'* CLAUSE.

*Id.* (emphasis in original).

■ These provisions are so apparent that absent evidence to the contrary, the Court cannot find Plaintiff committed a fraud when Defendants signed the arbitration agreement. Defendants complain that Plaintiff did not orally explain the arbitration agreement to them, but Plaintiff was not required to take this action. Defendants are responsible for reading and comprehending the plain terms of the contract. *McKenzie,* 866 So.2d at 455 (stating that "[i]t is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it"); *See also Andrus v. Ellis,* 887 So.2d 175, 180 (Miss.2004) (stating "[a] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract"); *American Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 537 (5th Cir.2003) (quoting *Mixon v. Sovereign Camp,* *W.O.W.,* 155 Miss. 841, 125 So. 413, 415 (1930), for its holding, in which the Supreme Court of Mississippi stated "there cannot be two separate departments in the law of contracts, one for the educated and another for those who are not"). Without evidence, Defendants cannot simply claim the agreement they signed is unenforceable because they are "unsophisticated."

The second point concerns arguments made in front of Judge Lee. As noted earlier, in *Caldwell, et al v. Pioneer Credit Co., Voyager Life Ins. Co., et al,* Civil Action No.: 402–CV–279LN, in the underlying state court action between Plaintiff and Defendants, Judge Lee heard arguments from the parties in the context of a motion to remand.[12] In the order granting the motion to remand, Judge Lee noted that Defendant Reese claimed he was at least partially illiterate, and that he offered testimony as evidence of this illiteracy. The order states

> ...Mr. Reese testified that he is unable to read more than a little; that he was not able to read the loan documents; that he told 'the one who makes the loans' that he cannot read, but that even had he not done so, the loan officer, in his estimation 'ought to be [aware] of this educational level, as long as [he has] been dealing with them' and that he was relying on her to inform him of the contents of the documents.

*Id.,* p. 2, March 25, 2003. Reese argues that even if he did not inform Pioneer that he was illiterate they should have been aware because "he has gotten as many as ten to fifteen loans from Pioneer Credit

---

12. In the action before Judge Lee, Defendants Pioneer and Voyager filed a motion to dismiss on the basis that Plaintiffs' claims against Defendants should be compelled to arbitration. Judge Lee never reached the question of whether the claims should be arbitrated. The question was never reached because all proceedings were stayed in the action under docket entry no. 12 until the court rendered a decision on the outstanding motion to remand. As previously noted, the motion was granted.

Although the entire action in front of Judge Lee was remanded, the separate Complaint to Compel Arbitration is now before this Court.

over a period of twelve to thirteen years, and that on each occasion but the last, his loan transaction was handled by Robin Pennington." Reese testified that

> each time he went in, he asked for Pennington specifically, and usually, if she was not in, he would go back later, when she was there. Further, when asked whether he relied on her for business advice, he testified, 'Well, I always figure doing loans with her, you know, she would tell me what is best for me.'

*Id.* at n. 2. As further evidence of Reese's illiteracy, Footnote 3 of that opinion continues to state that

> ...Mr. Reese testified that he got as far in school as 'about the 8th grade,' and that he can read and write '[a] little bit but not enough to—just say I don't understand everything.' When asked whether he could read at an 8th grade level, Mr. Reese responded, 'I'm scared to say that.' He indicated that he cannot read well enough to read a newspaper; that he could not read the interrogatory requests presented to him; that in his business dealings, he has people read things to him; and that he could not read the loan documents, or at least not without assistance.

*Id.*

This information was the basis upon which Judge Lee granted the motion to remand, as the Court determined that it could not say to a certainty that Reese did not have a viable claim against a resident defendant.[13] Defendants did not bring forth this information concerning Defendant Clenton Reese's illiteracy in the present proceeding.

This places the Court in somewhat of a quandary when determining whether or not it should consider this information. The Court is not aware of the reasons this information was not submitted in the briefings related to the Second Motion for Summary Judgment before this Court. As noted above, it has, however, come to the attention of the court that in the underlying suit before Judge Lee, Reese did offer testimony concerning his illiteracy. Because this information was supplied to Judge Lee in the underlying action, the Court considers the information even though Defendants did not supply this information when briefing their Response to the Second Motion for Summary Judgment.

■ Illiteracy alone is "not a sufficient basis for the invalidation of an arbitration agreement." *American Heritage*, 321 F.3d at 537. Thus, even if all the Defendants were illiterate, the Court could not invalidate the arbitration agreement on that basis alone. Only in certain specified circumstances can illiteracy give rise to such an invalidation. These circumstances are when someone in Plaintiff's position 'misrepresented the facts,...acted in less than good faith, or...had notice of [Defen-

---

**13.** Although Judge Lee granted the motion, the court did not do so without reservation. It stated

> Having reviewed the evidence presented by the parties, including the documents evidencing plaintiffs' transactions and plaintiffs' deposition testimony, the court concurs fully in defendants' assessment of the viability, or rather non-viability, of the claims of most of the plaintiffs. However, the court cannot conclude on the evidence before it that none of the plaintiffs has any potentially viable claim for recovery against

a resident defendant. The court notes in particular the testimony of Clenton Reese. *Id.*, p. 2. The Court likely made this statement because of the form describing the insurance purchased by Defendants. At the top of that form is a sub-title in capitalized letters which states "NON–COMPULSORY INSURANCE VOLUNTARILY PURCHASED BY DEBTOR." Defendants signed this form, but now claim they are so unsophisticated as to not understand this title, and that Plaintiff misled them into believing this insurance was required.

dants'] ignorance. *Id.,* at 539(quoting *Southern Nat'l Bank v. Crateo,* 458 F.2d 688, 692 (5th Cir.1972)).

Defendants argue all three circumstances are present in this case. Three of the Defendants, Gussie Caldwell, Mary Reese, and Thelma Walker, provide no evidence to the Court that this is so. All that these Defendants submitted to the Court in their briefings for this cause are conclusory statements that Plaintiff misled Defendants and thereby committed a fraud. That would also be true for Reese, except the Court has before it testimony offered in the motion to remand before Judge Lee.

 With respect to that testimony, the Court cannot say there is not an issue of material fact concerning whether Plaintiff had notice of Reese's illiteracy.[14] If Plaintiff did have notice of his illiteracy, then the presumption of validity for the arbitration agreement fails and Reese will not have to arbitrate his claims against Plaintiff.[15]

Only with respect to Reese does the Court believe there is an material issue of fact with respect to whether Plaintiff had notice of his illiteracy. Defendants Gussie Caldwell, Mary Reese, and Thelma Walker did not provide this Court with any evidence supporting their argument that this

Court should not enforce the arbitration agreement. Therefore, in the alternative, only those three Defendants must submit their claims against Plaintiff to arbitration, and all state court proceedings with respect to their claims shall be stayed.

## IV. Conclusion

IT IS THEREFORE ORDERED that the Second Motion of Plaintiff for Summary Judgment [24–1] is granted on the basis of collateral estoppel. Defendants' claims against Plaintiff Voyager Life Insurance Company shall be subject to arbitration pursuant to the terms of the arbitration agreement.

IT IS FURTHER ORDERED that the proceedings governing Defendants' claims against Plaintiff Voyager Life Insurance Company in the Circuit Court of Noxubee County, Mississippi, are hereby stayed. This case is hereby closed.

**14.** Although it appears that Pioneer handled the transaction with Defendants, and hence notice would have been directly given to Pioneer, notice would be imputed to Plaintiff Voyager because Pioneer was acting as Plaintiff Voyager's agent when it sold Voyager products as part of the overall loan packages. *Lane v. Oustalet,* 873 So.2d 92, 96 (Miss. 2004). Plaintiff does not contest that Pioneer acted as its agent when selling its insurance products. Thus, if Pioneer had notice of Reese's illiteracy, then so did Plaintiff Voyager.

**15.** If Plaintiff did have notice of Reese's illiteracy, then it may also be said to have breached a fiduciary duty owed. A fiduciary duty

may arise in a legal, moral, domestic, or personal context, where there appears 'on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed.'

\* \* \* \* \* \*

In credit life insurance cases, a fiduciary relationship between bank and consumer-borrower may be established on the basis of contract, agency, or the reposing of trust and confidence.

*Lowery v. Guaranty Bank & Trust,* 592 So.2d 79 (Miss.1991) (citations omitted).