# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02109-COA

**CINDY PETTY**  **APPELLANT**

v.

**BAPTIST MEMORIAL HEALTH CARE**  **APPELLEES**
**CORPORATION, BAPTIST MEMORIAL**
**HOSPITAL-GOLDEN TRIANGLE, INC., MARY**
**ELLEN SUMRALL, INDIVIDUALLY, VANESSA**
**LAFAYETTE, INDIVIDUALLY, ALICIA**
**GRANT, INDIVIDUALLY, PAUL CADE,**
**INDIVIDUALLY, AND ALEXANDRIA**
**BANKER, INDIVIDUALLY**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2013 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | P. NELSON SMITH JR. |
| ATTORNEYS FOR APPELLEES: | PAUL E. PRATHER |
| | MATTHEW GARY GALLAGHER |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/APPELLEES |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART – 03/10/2015 |
| MOTION FOR REHEARING FILED: | 03/24/2015 – DENIED; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART – 12/08/2015 |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT**:

**MODIFIED OPINION ON MOTION FOR REHEARING**

¶1.    The motion for rehearing is denied, the original opinion is withdrawn, and this opinion is substituted in lieu thereof.

¶2.    After she was terminated from her employment as a registered nurse (RN) at Baptist Memorial Hospital–Golden Triangle Inc. (BMH-GT), Cindy Petty filed a complaint, in the Circuit Court of Lowndes County, against BMH-GT; Baptist Memorial Healthcare Corporation (Baptist), BMH-GT's parent corporation;  Mary Sumrall, BMH-GT's chief nursing officer; Vanessa Lafayette, director of BMH-GT's maternal-child department; Alicia Grant, BMH-GT's assistant director of nursing; Paul Cade, BMH-GT's administrator; and Alexandria Banker, BMH-GT's head nurse for the labor-and-delivery department.  BMH-GT, Baptist, and the individual appellees, collectively, will be referred to as Baptist unless the context requires specific name identification.  Baptist filed motions for summary judgment,[1] which the circuit court granted, and Cindy appeals.

¶3.    For the reasons discussed later in this opinion, we affirm in part and reverse and remand in part.

FACTS

¶4.    Cindy was employed by BMH-GT for sixteen years as an RN in BMH-GT's labor-and-delivery department.  She was an at-will employee.  On February 24, 2010, Cindy successfully performed an internal bimanual uterine massage on a postpartum patient who

---

[1] Three separate motions for summary judgment were filed.  The individual appellees filed a joint motion; Baptist and BMH-GT filed separate motions.

was experiencing severe hemorrhaging. By letter dated February 27, 2010, BMH-GT terminated Cindy's employment based upon her performance of the procedure, finding that she acted without a physician's order and that "practicing outside of the scope of [her] RN practice is reportable to the state board of nursing." At some point, BMH-GT contacted the Mississippi Board of Nursing (Board) regarding Cindy's performance of the procedure, but after a formal investigation and a hearing, the Board took no disciplinary action against her. Cindy later filed her complaint, alleging: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) tortious interference, and (4) defamation. BMH-GT, Baptist, and the individual appellees responded with their separate motions for summary judgment, which the circuit court granted, resulting in this appeal.

## DISCUSSION

¶5.     The standard of review for summary judgments is well established:

> [An appellate court] conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it[.] . . . The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If there is no genuine issue of material fact and the moving party is entitled to [a] judgment as a matter of law, summary judgment should be granted in the moving party's favor. The burden of demonstrating that no genuine issue of material fact exists is on the moving party. If there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party. That is, it is better to err on the side of denying a motion for summary judgment if a doubt exists as to whether a genuine issue of fact exists.

*Lee v. Golden Triangle Planning & Dev. Dist. Inc.*, 797 So. 2d 845, 847-48 (¶¶5-6) (Miss. 2001) (internal citations omitted).

3

¶6. On appeal, Cindy argues that the circuit court erred by granting summary judgment as to her claim of intentional infliction of emotional distress because there remain genuine issues of material fact, and a reasonable jury could find that the appellees' actions were outrageous, willful, malicious, and intentional. Cindy also argues that the circuit court erred in finding that her negligent-infliction-of-emotional-distress claim was barred by Mississippi Code Annotated section 71-3-9 (Rev. 2011) (the exclusivity provision of the Workers' Compensation Law) because Baptist's actions were intentional. On appeal, Cindy has failed to raise any arguments challenging the circuit court's grant of summary judgment as to her claims of tortious interference and defamation.

¶7. As might be expected, with respect to Cindy's claim of intentional infliction of emotional distress, Baptist asserts that the decision of the circuit court is proper and legally correct because Cindy did not, and cannot, show the existence of genuine issues as to whether Baptist's actions were intentional. Baptist also argues that because Cindy failed, on appeal, to raise any arguments regarding the circuit court's grant of summary judgment on her claims of tortious interference and defamation, she has now waived those issues. We agree. "Where an assignment of error is not discussed in the briefs, it is considered abandoned and waived on appeal." *Clay v. Clay*, 837 So. 2d 215, 220 (¶27) (Miss. Ct. App. 2003) (citing *Sumrall v. State*, 758 So. 2d 1091, 1094 (¶6) (Miss. Ct. App. 2000)). Therefore, we affirm the circuit court's grant of summary judgment as to those claims, and we only discuss Cindy's claims of intentional infliction of emotional distress and negligent

infliction of emotional distress.

## I. *Intentional Infliction of Emotional Distress*

¶8. As stated, Cindy insists that the facts of this case clearly demonstrate that BMH-GT acted with malice when it terminated her employment without a legitimate basis for doing so. Although Cindy admits that she was an at-will employee with BMH-GT, she insists that the lack of a legitimate basis for her termination proves that BMH-GT's actions were intentional, willful, wanton, and malicious. As will be shown later in our discussion, we disagree with this argument. Cindy further insists that malice can be inferred from the fact that BMH-GT reported her to the Board, thereby, according to Cindy, intentionally attempting to place her nursing license in jeopardy. We see some merit to this argument and will address it later in this opinion.

¶9. "A claim for intentional infliction of emotional distress requires conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Jones v. Mullen*, 100 So. 3d 490, 498-99 (¶40) (Miss. Ct. App. 2012) (quoting *Langston v. Bigelow*, 820 So. 2d 752, 757 (¶11) (Miss. Ct. App. 2002)). "If there is outrageous conduct, no injury is required for the recovery of infliction of emotional distress or mental anguish." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (¶35) (Miss. 2004) (citation omitted). "[T]he nature of the act itself, rather than the seriousness of the consequences, can justify an award for compensatory damages." *Id.* (citation omitted).

5

¶10. "Mississippi is an employment at-will state. The general rule of employment at[-]will is that a contract for employment for an indefinite period may be terminated at the will of either party, whether the termination is for any reason or no reason at all." *Buchanan v. Ameristar Casino Vicksburg Inc.*, 852 So. 2d 25, 26 (¶4) (Miss. 2003) (citation omitted). So Cindy's argument—that the lack of a legitimate basis on the part of BMH-GT for her termination proves that BMH-GT's actions were intentional, willful, wanton, and malicious—is wholly without merit. However, our analysis does not end here.

¶11. In her complaint, Cindy alleged that "[she had been] informed that she was terminated for [performing the] procedure, which had been done at [BMH-GT] for more than twenty . . . years, and [because the] procedure was outside the scope of nursing in the State of Mississippi." She also alleged that Baptist and the individual appellees had "filed a complaint with the . . . Board . . . seeking to have [her] license revoked." She further alleged that the appellees had "not only sought to ruin [her] career at Baptist, [but had] intentionally sought to prevent [her] from ever practicing nursing by having her license revoked." Finally, she alleged that BMH-GT had acted in violation of its own policies and procedures and had made false statements about her, resulting in her "career and reputation having been irreparably damaged as a result of the defendants' unlawful conduct."

¶12. In their answers BMH-GT and the individual appellees admitted that BMH-GT had "made inquiry to the . . . Board . . . with regard to the procedure performed by [Cindy]." However, in its motion for rehearing before this Court, Baptist asserts that "[t]here is no

6

evidence in the record establishing the date or substance of any of the [d]efendants' communications to the Board of Nursing."[2]  Baptist is correct that the date of the communication to the Board is not established in the record.  However that omission is not outcome determinative.  Who sent the communication and what was said in the communication is more important, and those questions are answered by the Board's response, which is contained in the record.  The Board responded in a letter to Sumrall, stating:

> This is in response to your inquiry regarding the scope and practice of the [RN] in performing [the] internal bimanual uterine massage.

> On July 23, 2010, the Nurse Practice Committee and the full [Board] determined that it is within the scope of the appropriately trained [RN] to perform the [procedure] per an institutional policy addressing the emergency management of postpartum hemorrhage.

¶13.    In support of the summary-judgment motions, Baptist submitted excerpts from the transcript of Cindy's deposition, wherein she discussed her relationship with the individual appellees, in an attempt to establish that they had not subjected her to harassment or made false statements about her.  In her response, Cindy argued, among other things, that a jury could find that BMH-GT communicated with "the [Board] in an effort to have her license revoked [and that its action was] willful, outrageous, revolting, and certainly intentional."

---

[2] In an attempt to get information into the record that was not a part of the record when we handed down our original opinion, Baptist filed a motion, on the same day that it filed its motion for rehearing, seeking to supplement the record with an affidavit from Grant, who at the time of the submission of the affidavit was the assistant administrator for BMH-GT.  By order entered simultaneously on the date of this opinion, we have denied the motion to supplement.

7

Cindy also argued that it was clear that BMH-GT and the individual appellees had acted with malice and with the intent to harm her by terminating her employment based on her performance of a procedure that several other BMH-GT nurses had performed without reprimand or termination.

¶14. In support of her arguments, Cindy submitted excerpts from the transcripts of the depositions of several individuals, including Dr. James Holzhauer, the patient's treating physician; Dr. Gregory Childrey, another medical doctor employed by BMH-GT; and Mary Loving, Cindy Harrison, Marty Dollar, and Elaine Chance, labor-and-delivery nurses then employed by BMH-GT.

¶15. The following colloquy took place during Dr. Holzhauer's deposition:

[ATTORNEY]:      In February of 2010, what would have been required of [labor-and-delivery nurses] in a postpartum hemorrhage situation?

[HOLZHAUER]:     Stop the bleeding.

[ATTORNEY]:      And how would they do that?

[HOLZHAUER]:     The best way to stop bleeding is bi-manual.

****

[ATTORNEY]:      All right. And have you specifically trained nurses at Baptist to perform this procedure?

[HOLZHAUER]:     I have.

[ATTORNEY]:      Can you give us some names of some nurses that you've trained?

8

[HOLZHAUER]:    The old crew.

[ATTORNEY]:     All right.

[HOLZHAUER]:    Okay.  The ones that have been there a long time all know how to do this.

[ATTORNEY]:     All right.  Such as Cindy Petty?

[HOLZHAUER]:    Such as Cindy Petty.

¶16.    During his deposition, Dr. Childrey also stated that on March 24, 2010, he wrote a letter to a Mr. Dixon, an investigator for the Board.  Dr. Childrey read from the letter, which stated:

> [P]lease be advised [that] I have prepared this statement in reference to C[indy].  It's my understanding that you requested this information during your meeting with Cindy . . . .  [Cindy] is an excellent labor[-]and[-]delivery nurse.  She, along with other [nurses,] ha[s] been trained by me and other OB/GYN doctors to perform the procedure that has given rise to this issue before the [B]oard.
>
> Further, these nurses have a standing verbal order to perform this procedure in the event that a situation arises . . . for it to become necessary.  No further order, either written or verbal, is necessary for a labor[-]and[-]delivery nurse to perform this procedure on any of my patients.  Thus, [Cindy] acted in accordance with her training and in accordance with doctor's orders in performing the procedure at issue.
>
> Attached to this letter are two written standing orders concerning [the procedure].  These standing orders are understood to encompass both external and internal massage if necessary.  No additional orders are necessary for internal massage.

Dr. Childrey also stated that he had attended the Board hearing and had provided testimony on Cindy's behalf.  He indicated that he believed that Cindy had been competent to perform

9

the procedure.

¶17. During her deposition, Mary stated that she had heard rumors about the incident leading to Cindy's termination. Mary also stated that she had spoken with other nurses at BMH-GT, who had indicated that they would have performed the procedure on the post-operative patient, just as Cindy had. During her deposition, Harrison stated that she had performed the procedure "[a] couple of times," and that she was unaware of any nurse other than Cindy who had been reprimanded, suspended, or terminated based on the nurse's performance of the procedure. Marty and Elaine made identical statements during their depositions.

¶18. By order filed December 5, 2013, the circuit court found that summary judgment was proper as to Cindy's claim of intentional infliction of emotional distress because Cindy could not cite any act by BMH-GT or the individual appellees that constituted deliberate and continuous harassment, or that could be considered extreme and outrageous conduct. The circuit court also found that Cindy's claim of negligent infliction of emotional distress was barred by section 71-3-9. The circuit court further found that Cindy could not prevail on her tortious-interference claim because Cindy had provided no evidence to support her allegation that the alleged inquiry made by BMH-GT to the Board had caused her to lose any employment opportunities. Additionally, the circuit court found that summary judgment was proper as to Cindy's defamation claim because Cindy had not provided any evidence of false statements made by BMH-GT or the individual appellees. Finally, the circuit court found

that any statements made by BMH-GT were protected by a qualified privilege.

¶19.   As already discussed, we find that Cindy has waived any error regarding the circuit court's grant of summary judgment on her claims of tortious interference and defamation because of her failure to make any argument or cite any authority for her position. Therefore, it is not necessary that we discuss the reasons offered by the circuit court for granting summary judgment on those issues.

¶20.   In *Lee*, a case cited by the appellees in this case, the appellant, an at-will employee, was terminated after she received negative feedback on her performance evaluations and after she refused to accept a resultant demotion. *Lee*, 797 So. 2d at 847 (¶¶3-4). Following her termination, she filed a grievance complaint with her former employer, and she hired an attorney to represent her during the grievance process. *Id.* at (¶4). After the grievance committee upheld the termination, the appellant sued the former employer, alleging, in part, intentional infliction of emotional distress based on retaliatory discharge. *Id.* The appellant argued that she was fired because she initiated the grievance process and because she hired an attorney to represent her. *Id*. at 851 (¶21). The trial court granted summary judgment in favor of the employer, and an appeal ensued. *Id*. at 847 (¶1). On appeal, our supreme court upheld the judgment of the trial court as to the emotional-distress claim, finding that

> [a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time. It is the nature of the act itself[—]not the seriousness of its consequences[—]that gives impetus to legal redress.

11

*Id.* at 851-52 (¶24) (internal citations and quotation marks omitted).

¶21. As indicated, because Cindy was an at-will employee, BMH-GT was free to terminate her at any time. Therefore, based on *Lee*, we find no merit to Cindy's argument that BMH-GT can be held liable to her for the emotional distress that she suffered as a result of BMH-GT's termination of her. However, as discussed in the remaining portion of this opinion, BMH-GT's communication to the Board after lawfully terminating Cindy moves this case outside of the parameters of *Lee*, thereby making *Lee* distinguishable.

¶22. As discussed, Baptist argues in its motion for rehearing that the record does not contain the date of the communication to the Board, but it does not explain the significance, if any, of the date. We have already noted that the date is not outcome determinative. This is so because in BMH-GT's termination letter to Cindy, it advised her that the procedure that she had performed was outside the scope of her practice and that "practicing outside of the scope of [her] RN practice is reportable to the state board of nursing." So it is clear that when BMH-GT informed the Board of Cindy's performance of the procedure, it was not seeking information to determine whether Cindy had engaged in practice beyond her competency. The termination letter made it clear that, as far as BMH-GT was concerned, she had, and the letter informed Cindy that "[d]ue to the seriousness of [her] actions, [her] employment with [BMH-GT was] being terminated[,] effective immediately[,] for [her] unacceptable practice."

¶23. So the question must be asked, why did BMH-GT send the communication to the

Board? It certainly was not seeking to confirm a good-faith belief—before firing Cindy—that Cindy had acted outside the scope of professional expertise and competency, for it had already made that determination. Moreover, it did not need that confirmation before it could fire her because she was an at-will employee. The termination letter stated that Cindy's actions were reportable to the Board, but Baptist has offered nothing to explain why that was so, other than asserting that it had a duty to report misconduct to the Board. The problem with this argument is that Cindy had not committed any misconduct, as determined by the Board. Additionally, BMH-GT has not explained how— even before the Board's decision— it could conclude that Cindy had committed misconduct in light of Dr. Holzhauer's statement that he expected a labor-and-delivery nurse, such as Cindy, in a postpartum-hemorrhaging situation to stop the bleeding by performing the exact procedure that Cindy performed, as she had been trained to perform.

¶24. Further, the record does not establish that it was a routine practice for BMH-GT—prior to or following the termination of an employee for cause—to make inquiry of the Board regarding the propriety of the employee's actions that led to the employee's termination. The record also fails to establish that in communicating with the Board, BMH-GT was required to provide the Board with information about Cindy. If it simply wanted information on the appropriateness of a registered nurse performing the procedure that Cindy had performed, it could have inquired and obtained that information without identifying the employee who had performed the procedure. And perhaps most importantly, it would not

13

have been necessary to report the information in a manner so as to spark an investigation of the employee, as was done here. Therefore, it is reasonable to conclude that a genuine issue of fact exists as to whether BMH-GT's action in reporting the incident to the Board was "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

¶25. The fact that two doctors at BMH-GT had trained, ordered, and expected labor-and-delivery nurses to perform the very procedure that BMH-GT reported Cindy to the Board for performing lends further support to the conclusion that a genuine issue of fact exists as to BMH-GT's motive for doing so and whether its action was outrageous, extreme, and exceeding the bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized society. Additionally, the record reveals that other nurses, against whom BMH-GT took no disciplinary action, had performed the very same procedure that Cindy was reported for having performed. And there is no evidence or suggestion that BMH-GT reported any of them to the Board. Finally, we again note that the Board did not find that Cindy's performance of the procedure fell outside of the scope of her practice as a RN. Consequently, the Board found that no disciplinary action was warranted. Based on the facts presented and the reasonable inferences that may be drawn therefrom, we find that the circuit court erred in granting summary judgment on Cindy's claim of intentional infliction of emotional distress.

II.     *Negligent Infliction of Emotional Distress*

14

¶26. Section 71-3-9 provides:

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

¶27. In *Bowden v. Young*, 120 So. 3d 971, 975 (¶10) (Miss. 2013), after the employment relationship ended, former employees filed a complaint against their former employer, asserting claims of battery, intentional infliction of emotional distress, aiding and abetting the maintenance of a public and private nuisance, and conspiracy. The employer moved for a dismissal, arguing that the employees' claims were barred by section 71-3-9. *Id*. The trial court denied the motions, and the employer appealed. *Id*. Upon review, the Mississippi Supreme Court found that, "[e]ssentially, if the facts alleged or proven point to negligence, gross negligence, or recklessness, *despite an allegation of actual intent*, [an appellate court] will find that workers' compensation is the sole avenue for relief for the aggrieved party." *Id*. at 977 (¶15) (emphasis added). Our supreme court further found that "absent the employer's *deliberate intent and design to injure* the employee, the law in Mississippi . . . does not allow an injured employee to escape the exclusive-remedy provisions of the Act." *Id*. at (¶18) (emphasis added). Because Cindy was an at-will employee claiming that BMH-

15

GT is liable to her for negligent infliction of emotional distress arising from BMH-GT's termination of her, *Lee* and *Bowden* make it clear that she cannot maintain an action against her former employer for negligent infliction of emotional distress. This issue is, therefore, without merit.

¶28.     Accordingly, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion. However, we want to be clear; we are reversing only on Cindy's claim that BMH-GT reported her to the Board without any justification for doing so.[3] Since, as we have already noted, BMH-GT was not legally or professionally obligated to do so, a genuine issue of material fact remains as to its motive for doing so and whether its action in reporting the incident to the Board was "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. For sure, on the facts presented, a jury could so find, because one reasonable interpretation of BMH-GT's action is that it undertook the post-termination action to destroy Cindy's career as a registered nurse, or, at the very least, to make it extremely difficult for her to secure another job in the nursing field.

¶29.     **THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-**

---

[3] While the date of BMH-GT's report to the Board is not clearly stated in the record, it is worth reiterating that in BMH-GT's termination letter to Cindy, it pointed out that Cindy's action was "reportable to the state board of nursing." Something done that is reportable implicates an appropriateness of taking further or future action regarding the thing that was done.

**HALF TO THE APPELLEES.**

LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.