# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01028-COA

**KEVIN O'HEA, M.D.**                                                          **APPELLANT**

**v.**

**GEORGE REGIONAL HEALTH &**                                      **APPELLEES**
**REHABILITATION CENTER D/B/A GEORGE**
**REGIONAL HEALTH SYSTEM COMMUNITY**
**MEDICAL CENTER A/K/A GEORGE COUNTY**
**HOSPITAL AND PAUL GARDNER,**
**INDIVIDUALLY**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2017 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM MITCHELL CUNNINGHAM JR. |
| | TROY THOMAS SCHWANT |
| ATTORNEYS FOR APPELLEES: | JOSEPH LEE ADAMS |
| | LINDSAY THOMAS DOWDLE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL |
| | INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Kevin O'Hea appeals the judgment of the George County Circuit Court, alleging that the court erred in granting summary judgment based on the following reasons: (1) he was not allowed to conduct discovery; (2) there was evidence in the record that his claims were properly stated, preserved under the Mississippi Tort Claims Act (MTCA) notice provision, and not barred by the one-year statute of limitations; (3) his abuse-of-process claim was proper because the Mississippi Board of Medical Examiners has statutory powers and

privileges similar to the legal system. We find no merit to O'Hea's arguments; therefore, we affirm.

FACTS

¶2. O'Hea worked as a physician at George County Hospital (GCH), which is a community hospital and undisputedly a political subdivision, governed by the MTCA.[1] On June 3, 2011, GCH terminated O'Hea in accordance with the provisions in his employment contract, which allowed GCH to terminate him upon giving a 120-day's notice. On April 12, 2012, O'Hea sent a notice of claims letter to Paul Gardner, the chief executive officer of GCH.[2] According to O'Hea, Gardner received the notice the next day. O'Hea states that he took no action and did not file his lawsuit during the ninety-five days after Gardner's receipt of the notice letter because of relevant provisions of the MTCA. GCH did not respond to the notice. On August 17, 2012, O'Hea filed his complaint, specifically alleging that on or about July 3, 2011, GCH had published in The Mississippi Press a letter that stated his termination was due to the fact that he would not abide by the rules and policies of the hospital. He further alleged that on or about July 5, 2011, among other alleged false statements, Gardner told over 100 people at a county board of supervisors meeting that he had failed a prescription narcotics audit, which O'Hea contends was not true. Finally, O'Hea contended

---

[1] In his complaint, O'Hea did not plead or assert that the MTCA was implicated in any way.

[2] GCH and Gardner will be referred to collectively in this opinion as GCH, unless context dictates otherwise.

2

that GCH (and Gardner acting as CEO) committed abuse of process when they made an allegedly false report to the Mississippi State Board of Medical Licensure that he had been released from his contract with GCH because he had violated hospital policy regarding the over prescribing of narcotics.

¶3.     As a result, O'Hea, was ordered to undergo a mental evaluation to determine whether his license should be restricted, suspended, or revoked.  He was also compelled to attend a hearing concerning his fitness to practice medicine in Mississippi.  Notably, he maintained that none of the allegations made by Gardner and GCH were true.  O'Hea's complaint was filed against both of those defendants, which the defendants jointly replied to—denying all allegations in the complaint.

¶4.     GCH and Garner later filed a joint motion for summary judgment, and O'Hea filed a Mississippi Rule of Civil Procedure 56(f) motion.[3]   The circuit court denied O'Hea's motion and granted summary judgment in favor of GCH and Gardner on all claims.  Having abandoned his negligent infliction of emotional distress claim, O'Hea now appeals.

DISCUSSION

---

[3] A party opposing a motion for summary judgment may request a continuance in order to conduct further discovery pursuant to Rule 56(f) which provides as follows:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

3

¶5. The standard of review, pursuant to *Vicksburg Healthcare LLC v. Dees*, 152 So. 3d 1171, 1173-74 (¶5) (Miss. 2014) (citations omitted), is as follows:

> This [c]ourt will review the circuit court's denial of [d]efendants' motion for summary judgment under a de novo standard. All evidence will be viewed in the light most favorable to the nonmoving party. If no genuine issue of material fact exists to be resolved, then summary judgment shall be granted, as a matter of law, in favor of the movant.

*I.    Discovery*

¶6. "Trial [c]ourts are afforded broad discretion in discovery matters, and this [c]ourt will not overturn a trial court's decision unless there is an abuse of discretion." *Newsome v. Shoemake*, 234 So. 3d 1215, 1226 (¶43) (Miss. 2017) (internal quotation marks omitted). "The decision to grant or deny a continuance is within the sound discretion of the trial court and will be reversed solely where the court abuses that discretion." *Owens v. Thomae*, 759 So. 2d 1117, 1120 (¶10) (Miss. 1999).

¶7. O'Hea argues that the circuit court erred by dismissing his case at the summary-judgment stage because he had not completed critical discovery into his claims and had filed a Rule 56(f) motion. When he was fired, he was told that it was without cause. However, the article dated June 29, 2011, stated that his termination was due to his not abiding by GCH's rules and policies and not supporting the hospitalist program, among other undisclosed issues. O'Hea disputes that there were other reasons and argues that he was not given an opportunity to perform any discovery about them. Later, in a July 7, 2011 newspaper article, Gardner is quoted as saying O'Hea failed an audit on pain prescriptions,

4

which O'Hea disputes. Gardner also said that O'Hea opposed the hospitalist program. Finally, the issues of prescription narcotics and mental illness surfaced against him. He vehemently denied all allegations asserted by Gardner and GCH, and asserted that further discovery was needed in order to fully investigate the claims that were made and the intentions behind them.

¶8.     O'Hea contends that he provided the trial court with specific facts demonstrating why he could not adequately oppose the motion for summary judgment and specifically demonstrated how the postponement of a ruling on the motion would enable him, by discovery, to rebut the defendants' showing the absence of a genuine issue of fact. He further contends that GCH evaded providing relevant information in written discovery responses, and he submitted notices of deposition, which it refused to comply with. In essence, he argues that he was denied a fair opportunity to oppose the motion for summary judgment. *See Stanley v. Scott Petroleum Corp.*, 184 So. 3d 940, 943 (¶7) (Miss. 2016) (finding that the plaintiffs complied with Rule 56(f) by presenting specific facts indicating why additional time for discovery would assist them in opposing the motion for summary judgment).

¶9.     GCH contends that the circuit court did not abuse its discretion in denying O'Hea's Rule 56(f) motion, pointing out that discovery was a moot issue because his claims fail as a matter of law. In *Indemnity Ins. Co. of N. Am. v. Guidant Mutual Ins. Co.*, 99 So. 3d 142, 147-48 (¶13) (Miss. 2012), the Mississippi Supreme Court explained:

> To succeed on a Rule 56(f) motion for continuance, the moving party is required to provide specific reasons as to why it cannot oppose the summary-judgment motion without additional discovery and specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

(Internal quotation mark omitted). Here, GCH contends that O'Hea did not satisfy this requirement, and no amount of discovery would allow them to because there is no dispute as to the dates of the various publications, when the statute of limitations began to run, or the elements of the causes of action. GCH argues that when it moved for summary judgment, the record contained everything that the circuit court needed to properly conclude that O'Hea's claims were not viable.

¶10. Although not fatal to his claim, O'Hea's request for a continuance appears to be simply a general request outlining the discovery request that had been issued at that point. *See Owens*, 759 So. 2d at 1120 (¶17). His request did not contain specific facts or information on any additional discovery that would create a genuine issue of fact. In addition, for reasons explained later in this opinion, O'Hea's claims failed as a matter of law, as they either failed because he filed his complaint outside of the applicable statute of limitations, the entity was immune from suit, or he failed to meet the elements of his cause of action. Accordingly, the court did not abuse its discretion by denying O'Hea's motion for a continuance or granting summary judgment.

II.     *MTCA Application and Statute of Limitations*

¶11. O'Hea asserts that the circuit court erred in granting summary judgment where there

was evidence in the record that his claims were properly stated and preserved under the MTCA notice provision.  Specifically, he asserts that the circuit court erred in finding that his claims against GCH fail as a matter of law when applying the provisions of the MTCA. Mississippi Code Annotated section 11-46-11(1) (Rev. 2012) requires that a person having a MTCA claim file a notice of claim at least ninety (90) days before instituting suit. *See Zumwalt v. Jones Cty. Bd. of Sup'rs*, 19 So. 3d 672, 688 (¶80) (Miss. 2009).  There is no dispute that O'Hea executed a notice of claim letter and waited the requisite time period before filing suit. We do note, however, that the MTCA was not specifically referenced in his complaint.

¶12.    The Mississippi Supreme Court in *Zumwalt*, 19 So. 3d at 688 (¶83), stated the following:

> Certain intentional torts are excluded from the MTCA's waiver of immunity. Subsection (2) of Mississippi Code Section 11-46-5 provides that torts constituting fraud, *malice*, libel, slander, *defamation*, or any criminal offense other than traffic violations are not within the course and scope of employment. Miss. Code Ann. § 11-46-5(2) (Rev. 2002). Thus, these intentional torts are outside the scope of the MTCA's waiver of immunity, and the *MTCA does not apply*.

(Emphasis added).

¶13.    Mississippi Code Annotated section 11-46-7(2) (Rev. 2012) plainly states:

> For purposes of this chapter an employee shall not be considered acting within the course and scope of his employment and a government entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, *malice*, libel, slander, *defamation* or any criminal offense.

7

(Emphasis added).

¶14. According to GCH, when it comes to the hospital itself, all of O'Hea's claims are excluded from the MTCA's waiver of immunity. Defamation is explicitly excluded from the MTCA's waiver of immunity. In addition, GCH argues that the claims for intentional infliction of emotional distress and abuse of process are predicated on malicious conduct, which is also excluded under the MTCA.

¶15. O'Hea argues that his claims are properly brought under the MTCA. He further argues that his claims were pled in the alternative (addressing intentional, negligent, or reckless conduct) not necessarily predicated on malicious conduct, and, therefore, within the scope of the MTCA. *See Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (¶40) (Miss. Ct. App. 2011). GCH asserts that even assuming arguendo that his claim is not barred, O'Hea cannot meet his burden to prove intentional infliction of emotional distress, as his claim does not rise to the requisite severity. Additionally, GCH notes that according to O'Hea's deposition, he sought no treatment for his emotional distress. GCH also notes that there was evidence proving the allegations that were reported in the articles, further demonstrating a lack of maliciousness as to his lack of compliance with hospital policies.

¶16. We address the issue of abuse of process later in the opinion.

¶17. We agree with GCH. Under the MTCA section 11-46-7(2), "an employee shall not be considered acting within the course and scope of his employment and a government entity shall not be liable or be considered to have waived immunity for any conduct of its employee

8

if the employee's conduct constituted malice, libel, slander, defamation, or any criminal offense." Therefore GCH is immune from liability on O'Hea's defamation claim and on his intentional-infliction-of-emotional-distress claim to the extent that it references malicious conduct. As to O'Hea's argument that he pleaded in the alternative alleging negligent or reckless conduct, "workers' compensation is the sole avenue for relief for the aggrieved party." *Petty v. Baptist Mem'l Health Care Corp.*, 190 So. 3d 17, 25 (¶27) (Miss. Ct. App. 2015).

¶18. Turning to O'Hea's claims against Garner, he does not benefit from the MTCA tolling provision and his claims for intentional infliction of emotional distress and defamation fall victim to the one-year statute of limitations. As stated, O'Hea's complaint referenced a July 3, 2011 article, but he did not file his complaint until August 17, 2012, clearly over one year later, outside of the statute of limitations period for both causes of action. This issue is without merit.

### III. Abuse of Process

¶19. "The first element that must be shown in an abuse of process claim is 'that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process.'" *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 394 (¶15) (Miss. 2001). "The second element that must be shown in an abuse of process claim is 'that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process.'" *Id*. at (¶16). "The final element that must be shown in an

abuse of process claim is 'that damage resulted to the plaintiff from the irregularity.'" *Id*. at 395 (¶20). Gardner argues that he had a reasonable basis to report O'Hea to the licensure board, and did not have an ulterior motive. Accordingly, he is immune from liability pursuant to Mississippi Code Annotated section 73-25-67(b) (Rev. 2017), which expressly provides, "[t]here shall be no liability on the part of and no action for damages against . . . [a]ny person providing information to the committee or to the board without malice in the reasonable belief that such information is accurate."

¶20.    O'Hea argues that because administrative agencies are empowered with privileges of the legal system, people who wrongfully initiate those privileges are not immune from abuse-of-process claims. More specifically, O'Hea claims that Gardner's report to the licensure board, which resulted in the initiation of an investigation based on unfounded and disputed statements, put in motion a legal type process that adversely affected O'Hea. He contends that this was an illegal use of a statutory legal process.

¶21.    The court ultimately found that O'Hea's claim did not meet the definition of abuse of process, as it found that abuse of process was defined as a "legal process to something that comes from a court and not any kind of administrative or agency process." The court went on to state that

> this would prevent an abuse of process claim from arising out the hearing from the Mississippi State Board of Medical Licensure, [which is the source of O'Hea] claim. Since [O'Hea] would not be able to satisfy even the first element of an abuse of process claim, his claim would fail.

¶22.    We agree with the circuit court. The Mississippi Supreme Court in *Ayles ex rel. Allen*

*v. Allen*, 907 So. 2d 300, 303 (¶10) (Miss. 2005), defined abuse of process as follows:

> The action of abuse of process consists in the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained.

The process that was initiated here is not a legal process such as to fall within the bounds of the cause of action for abuse of process; therefore, we need not discuss the underlying merits of his claims against either GCH or Gardner because O'Hea's claims fail on the first element of his cause of action. As such, we affirm the judgment of the circuit court on this issue.

¶23. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**