# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01638-COA

SHARON MARK                                                          APPELLANT

v.

CITY OF HATTIESBURG, MISSISSIPPI,                           APPELLEES
MAYOR JOHNNY DUPREE, KIM BRADLEY,
DEBORAH DENARD DELGADO, CARTER
CARROLL, DAVE WARE AND HENRY E.
NAYLOR

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/2016 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KIM T. CHAZE |
| ATTORNEYS FOR APPELLEES: | L. CLARK HICKS JR. |
| | JAMES W. GLADDEN JR. |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED: 01/08/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**TINDELL, J., FOR THE COURT:**

¶1.    Sharon Mark sued the City of Hattiesburg (the City), Mayor Johnny Dupree (the

Mayor), and the individual members of the city council (collectively, the City Council)[1] for

slander, invasion of privacy, breach of implied contract, negligence, and intentional and/or

---

[1] The City Council's individual members included Kim Bradley, Deborah Delgado,
Carter Carroll, Dave Ware, and Henry Naylor.

negligent infliction of emotional distress.[2]  Prior to trial, the Forrest County Circuit Court granted the City's motion for summary judgment.  Following the conclusion of Mark's case-in-chief at trial, the circuit court entered a directed verdict for both the Mayor and the City Council.  On appeal, Mark argues she presented sufficient evidence to survive both the City's summary-judgment motion and the Mayor and the City Council's directed-verdict motion.  Finding no error, we affirm.

**FACTS**

¶2.     In 2004, Mark became the City's municipal-court clerk.  At all relevant times, Mark served as an at-will employee.  In 2012, the City received allegations of impropriety by Mark and several of the deputy clerks she supervised.  According to the accusations, the municipal-court employees had hidden paperwork; shredded documents; accepted bribes in exchange for dismissing tickets, fines, and warrants; and engaged in inappropriate contact with judges.  The reports alleged that Mark herself had personally intervened on behalf of an acquaintance and improperly waived his expungement fee.

¶3.     In response to the reported misconduct, the Hattiesburg Police Department conducted an internal investigation.  Based on the Department's findings, four municipal-court employees were disciplined.  Mark and two deputy clerks were suspended without pay, and

---

[2] Mark also asserted claims for menace and outrage.  Because those claims are tantamount to intentional infliction of emotional distress, we include any further discussion of them in our discussion of Mark's intentional-infliction-of-emotional-distress claim.  *See Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 n.1 (Miss. Ct. App. 2017).

another deputy clerk was fired. Mark was also ordered to pay the City $300 in restitution for her alleged involvement in waiving the expungement fee.[3]

¶4. Mark filed a grievance letter with her supervisor, Hattiesburg Police Chief Frazier Bolton, in which she contested the disciplinary action against her and denied any wrongdoing. After Chief Bolton upheld her suspension, Mark appealed the decision to the Mayor, who also upheld her suspension. Despite the findings of the internal investigation and Mark's at-will employment status, the Mayor chose not to terminate Mark. Instead, in January 2013, the Mayor reassigned Mark to the housing department and appointed her the department's coordinator for federal and state programs.

¶5. In June 2013, Mark sued the City, the Mayor, and the City Council (collectively, the Appellees) and asserted various claims of action. Specifically, Mark alleged that, during the summer and fall of 2012, while she was ill and recovering from breast cancer, the Appellees slandered her and violated her right to privacy. According to Mark, the Appellees (1) publicly characterized her, via numerous media outlets, as a criminal, a corrupt individual, and incompetent; (2) wrongly released her personal medical information to the public; and (3) ignored the grievance she filed following her suspension.

¶6. In response to Mark's allegations, the Appellees filed a summary-judgment motion. The circuit court granted summary judgment for the City but denied it as to the Mayor and the City Council. In July 2016, the circuit court conducted a five-day jury trial on Mark's

---

[3] Mark confirmed at trial that she never paid the City the $300 in restitution.

claims of slander, invasion of privacy, and intentional infliction of emotional distress against the City Council and the Mayor in their individual capacities. At the close of Mark's case-in-chief, the Mayor and the City Council moved for a directed verdict. After considering the evidence and the parties' arguments, the circuit court granted the directed-verdict motion. Mark filed several unsuccessful motions for posttrial relief. Aggrieved, Mark appeals.

## STANDARD OF REVIEW

¶7. We review de novo the circuit court's grant of the City's summary-judgment motion and the Mayor and the City Council's directed-verdict motion. *See Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 767 (¶12) (Miss. 2013). Although made at different stages of the proceedings, both motions challenge the sufficiency of the evidence and argue the movant is entitled to a judgment as a matter of law. *Denbury Onshore LLC v. Precision Welding Inc.*, 98 So. 3d 449, 452 (¶¶10-11) (Miss. 2012); *Breland v. Gulfside Casino P'ship*, 736 So. 2d 446, 448 (¶¶15-16) (Miss. Ct. App. 1999). When reviewing such motions, we view the evidence in the light most favorable to the nonmoving party. *Breland*, 736 So. 2d at 448 (¶16). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." M.R.C.P. 56(c). A directed verdict is appropriate "when the [nonmovant]'s evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party." *Ground Control LLC v. Capsco Indus. Inc.*, 214 So. 3d 232, 242 (¶35) (Miss. 2017) (internal quotation mark omitted).

4

## DISCUSSION

### I.      The City's Summary-Judgment Motion

¶8.     Mark first argues that the circuit court erroneously granted the City summary judgment.

#### a.      Employment

¶9.     Mark appears to raise no dispute as to her status as an at-will employee.[4] She asserts, however, that the City deprived her of a grievance hearing in accordance with the employee handbook and that her reassignment to the housing department "conveyed the impression to the public that she was being punished" for conduct she denied performing.

¶10.    The City's employee handbook directed the Mayor to meet with an aggrieved employee "within three (3) working days of receiving the grievance" and to provide a written response to the grievance "within five (5) working days after that meeting." The handbook further explained that the time limit for the appeal process could be extended with the parties' written consent. After Chief Bolton upheld her suspension without pay, Mark requested by letter dated September 23, 2012, that the Mayor formally respond to her grievance. In his response dated September 25, 2012, the Mayor acknowledged his receipt of Mark's request. The Mayor further stated that he was aware of Mark's health issues. As

---

[4] Under Mississippi's employment-at-will doctrine, "either the employer or the employee may terminate the employment relationship at will unless the parties are bound by an employment contract or a contract providing for a term of employment." *Collins v. City of Newton*, 240 So. 3d 1211, 1216-17 (¶14) (Miss. 2018) (quoting *Senseney v. Miss. Power Co.*, 914 So. 2d 1225, 1228 (¶8) (Miss. Ct. App. 2005)).

a result, the Mayor asked Mark to contact his administrative assistant to schedule a convenient time to discuss her grievance.

¶11.   On October 9, 2012, the Mayor mailed Mark another letter acknowledging that he had received her "letter of October 5, 2012, concerning scheduling an appointment time to meet." The Mayor provided that he expected to hear from Mark whenever she was ready to schedule the appointment. The following month, by letter dated November 13, 2012, the Mayor wrote that he had attempted to schedule a meeting but that Mark had been unavailable. While conveying to Mark his continued wishes for her recovery, the Mayor communicated his desire to complete the grievance process as soon as possible. The Mayor therefore again asked Mark to contact his administrative assistant between November 13, 2012, and November 26, 2012, to schedule a meeting. At trial, the Mayor testified that he attempted to comply with the City's employee handbook and provide Mark with a grievance hearing. Despite his repeated requests that Mark call to schedule a convenient time to meet, however, she never did so.

¶12.   On cross-examination, Mark acknowledged that she received each of the Mayor's letters. She also admitted that she never contacted the Mayor's administrative assistant to schedule an appointment. Instead, Mark testified that she chose to hire an attorney and pursue litigation. Mark also acknowledged during cross-examination that the employee handbook provided for disciplinary action, up to and including termination, for an employee who engaged in conduct unbecoming of a City employee. Though Mark denied any

6

wrongdoing, the findings of the police department's internal investigation led Mark's supervisors to suspend her and two other employees and to fire a fourth employee. Because Mark was an at-will employee, the Mayor could have terminated her employment. Instead, the Mayor chose to reassign her.

¶13. Based on the evidence in the record, we find no support for Mark's assertions that the City improperly denied her a grievance hearing and wrongfully transferred her. We therefore affirm the circuit court's grant of summary judgment to the City on Mark's employment-related issues.

### b. Intentional and Malice-Based Claims

¶14. Mark also asserted claims against the City for slander, invasion of privacy, and intentional infliction of emotional distress. The Mississippi Tort Claims Act (MTCA) provides governmental entities immunity "for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation[,] or any criminal offense other than traffic violations." Miss. Code Ann. § 11-46-5 (Rev. 2012). Thus, the City clearly possessed immunity from Mark's slander claim. In addition, to the extent Mark based her remaining claims on the alleged malicious conduct of City employees, the MTCA clearly bars those claims against the City as well. *See Jones*, 228 So. 3d at 819 (¶9). Malice-based torts "are not within the course and scope of employment" and fall "outside the scope of the MTCA's waiver of immunity . . . ." *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 82 (¶30) (Miss. 2017). Litigation against government employees for these intentional torts must

7

therefore proceed against them in their individual rather than official capacity. *Id.*

¶15.    In considering whether to grant summary judgment, the circuit court found that Mark, in her desire for a jury trial, had indeed framed her claims against the City in terms of intentional and malicious acts committed by the Mayor and the City Council. As a result, the circuit court granted the City summary judgment but allowed Mark to proceed with her claims against the Mayor and the City Council in their individual capacities. Because we find no error in the circuit court's grant of summary judgment to the City on Mark's intentional and malice-based claims, we affirm.

### c.    Negligence-Based Claims

¶16.    As an alternative to her argument that the Appellees intentionally inflicted emotional distress on her, Mark asserted before the circuit court that the Appellees' conduct amounted to negligence and negligent infliction of emotional distress. "Though the MTCA permits negligence actions against a governmental entity, to challenge the viability of a governmental actor's immunity under the MTCA, a plaintiff must first state a valid claim upon which relief may be granted." *Horton ex rel. Estate of Erves v. City of Vicksburg*, No. 2016-IA-01595-SCT, 2018 WL 2439659, at *3 (Miss. May 31, 2018). "It is only after the plaintiff has established a prima facie case against the entity that the MTCA and its immunity provision will be addressed." *Id.*

¶17.    To establish a claim of negligence, Mark had to show (1) the duty owed to her by the City; (2) a breach of that duty; (3) damages; and (4) "a causal connection between the breach

and the damages, such that the breach [was] the proximate cause of [her] injuries." *Sharrieff v. DBA Auto. Two LLC*, 242 So. 3d 944, 947 (¶9) (Miss. Ct. App. 2018). As for her negligent-infliction-of-emotional-distress claim, Mark was required "to plead and prove some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." *Orr v. Morgan*, 230 So. 3d 368, 377 (¶23) (Miss. Ct. App. 2017) (internal quotation marks omitted). "To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim." *Sharrieff*, 242 So. 3d at 947 (¶9).

¶18. As previously discussed, the circuit court concluded that, although Mark asserted an alternative argument based on negligence, she had actually presented her issues in the context of intentional acts.[5] Substantial credible evidence supports the circuit court's conclusion on this issue. Furthermore, even after viewing the evidence in the light most favorable to Mark, we find she failed to establish the essential element of damages to prove her negligence-based claims. Despite Mark's various allegations against the Appellees, she failed to offer

---

[5] In its summary-judgment motion, the City asserted that the exclusive-remedy provision of the Mississippi Workers' Compensation Act (the Act) barred Mark's negligence-based claims against it. *See Petty v. Baptist Mem'l Health Care Corp.*, 190 So. 3d 17, 25 (¶27) (Miss. Ct. App. 2015) (recognizing that, absent evidence of "the employer's deliberate intent and design to injure the employee," the Act's exclusivity provision barred the employee's negligent-infliction-of-emotional-distress claim). On appeal, however, the Appellees make no mention of this argument in their appellate brief. Further, as the circuit court explained at trial, it dismissed the City from the litigation because Mark framed her claims in terms of intentional and deliberate acts. We therefore confine our ruling on this issue to the reasoning provided by the circuit court for its decision and to the arguments raised by the Appellees' appellate brief.

substantial proof of any injury or demonstrable harm, whether physical or mental, arising from the Appellees' conduct. *See Orr*, 230 So. 3d at 377 (¶23). Mark testified the Appellees' conduct devastated her, caused her to not want to see visitors, resulted in a loss of appetite and weight, and made her physically ill. However, she presented no evidentiary support for her claims of physical and mental injury arising from the Appellees' conduct. Without proof of the essential element of damages, Mark could not create a genuine issue of material fact sufficient to survive the City's summary-judgment motion. Therefore, with regard to Mark's negligence-based claims, we also affirm the circuit court's grant of summary judgment to the City.

## II.     The Mayor and the City Council's Directed-Verdict Motion

¶19.    After granting the City summary judgment, the circuit court allowed Mark to proceed to trial on her claims of (1) slander, (2) invasion of privacy, and (3) intentional infliction of emotional distress against the Mayor and the City Council in their individual capacities. On appeal, Mark argues the circuit court erroneously granted the Mayor and the City Council a directed verdict on these claims.

### a.     Slander

¶20.    Mark argues the Mayor and the City Council slandered her and injured her reputation by (1) characterizing all clerks, including her, as having engaged in misconduct; (2) mentioning "clerk number 4," which she claims specifically referred to her; and (3) identifying her by her medical-leave form, which she states was attached to the police

department's internal-affairs report that Councilman Bradley released to the media.

¶21. "Slander is the spoken form of the tort of defamation." *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 65 (¶43) (Miss. Ct. App. 2011). "The question whether said-to-be-offending words are defamatory may be decided by the [c]ourt without submission to the trier of fact." *Chalk v. Bertholf*, 980 So. 2d 290, 296 (¶12) (Miss. Ct. App. 2007). To successfully prove slander, a plaintiff must prove: "(a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Collins v. City of Newton*, 240 So. 3d 1211, 1222 (¶35) (Miss. 2018). As our caselaw establishes, "the words used must have been clearly directed at the plaintiff[,] and the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation[,] or conjecture." *Chalk*, 980 So. 2d at 296 (¶12).

¶22. Following complaints of alleged misconduct in the municipal-court system, the police department launched its internal investigation. The City's attorney prepared an executive summary of the Department's findings for the Mayor, who then provided the document to the City Council. The document discussed the misconduct allegations made against the municipal-court employees. Although later made available to the public, the executive summary never referenced anyone specifically when discussing the allegations. The document instead referenced the municipal-court employees as an entire group. The same

11

applied to a letter the City Council signed and sent to the Mayor on September 18, 2012. The City Council's letter addressed the need for transparency and decisive action regarding the allegations. However, the letter only referenced the municipal-court employees as a whole and never referred to any specific employees.

¶23. In response to media questions about the reported misconduct, the Mayor and the City Council discussed the findings of the police department's internal investigation. Mark introduced into evidence a video compilation of the Mayor's and the City Council's remarks in response to the media questions. While the Mayor and the City Council referenced the entire group of clerks as a whole, the recording failed to show that they ever slandered Mark by making false statements about her or by specifically referencing her by her name or position as the municipal-court clerk. We also find no evidence to support Mark's assertion that the Mayor or City Council mentioned "clerk number 4" or that "clerk number 4" even referred to Mark. Upon review, we find no merit to Mark's assertion that these public comments regarding the clerks as an entire group somehow specifically slandered her.

¶24. In addition, Mark argues the Mayor and the City Council identified her by the release of her medical-leave form, which she claims they tied to another publicly disclosed document. Councilman Bradley testified that he inadvertently disclosed Mark's medical-leave form when he provided the media a copy of the police department's internal-affairs report without realizing that Mark's medical-leave form was attached to the back of the report. Mark's one-page medical-leave form showed her request for time off work for

12

breast-cancer surgery. Although the disclosure of Mark's medical-leave form may have been regrettable, we find no evidence that the disclosure was actually defamatory. Mark never alleged the document was false, and we cannot see how its disclosure in any way injured her.

¶25. Mark also appears to take issue with the public disclosure of the two-page internal-affairs report to which her medical-leave form was attached. We note, however, that neither party submitted the report into evidence. As a result, we have no way to determine whether the report was indeed defamatory.

¶26. Because Mark failed to provide any evidence that the Mayor or the City Council made false or defamatory statements about her that were injurious to her reputation, we affirm the circuit court's grant of a directed verdict to the Mayor and the City Council on this claim.

### b. Invasion of Privacy

¶27. Invasion of privacy includes the four following "distinct and separate sub-torts": (1) "[t]he intentional intrusion upon the solitude or seclusion of another"; (2) "[t]he appropriation of another's identity for an unpermitted use"; (3) "[t]he public disclosure of private facts"; and (4) "[h]olding another to the public eye in a false light." *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 396 (¶24) (Miss. 2001).

¶28. Although Mark asserts the conduct of the Mayor and the City Council triggered all four sub-torts, her arguments seem to focus mainly on "[t]he public disclosure of private facts . . . ." *Id.* "'One who publicizes a matter concerning the private life of another is subject to liability if the matter publicized (a) would be highly offensive to a reasonable person, and (b)

13

is not of legitimate concern to the public.'" *Grey v. Town of Terry*, 196 So. 3d 211, 220 (¶34) (Miss. Ct. App. 2016) (quoting *Williamson ex rel. Williamson*, 786 So. 2d at 396 (¶25)).

¶29.    Mark argues the Mayor and the City Council invaded her privacy by disclosing (1) the City Council's September 18, 2012 letter to the Mayor, (2) the executive summary, and (3) the police department's internal-affairs report with her medical-leave form attached. According to Mark, the Mayor and the City Council acted jointly to publicly release her confidential personal and personnel information.

¶30.    Despite Mark's assertions, we find that the allegations of misconduct in the municipal-court system constituted a matter of legitimate public concern. Both the City Council's September 18, 2012 letter and the executive summary dealt with the investigation of the allegations. Furthermore, neither document referenced Mark specifically, let alone publicized a matter concerning her private life. For these reasons, we find the disclosure of these documents fails to support Mark's invasion-of-privacy claim. With regard to the internal-affairs report, as previously discussed, neither party entered the document into evidence, and it is therefore not part of the record before us.

¶31.    Like the circuit court, we find the only cognizable part of Mark's invasion-of-privacy claim involved the disclosure of her medical-leave form. Even though the circuit court found the disclosure to be wrongful, it still concluded the disclosure was not actionable. While Mark contends the disclosure was highly offensive to *her*, the applicable standard requires

14

the matter publicized—i.e., Mark's breast-cancer diagnosis and surgery—to "be highly offensive to *a reasonable person*." *See Grey*, 196 So. 3d at 220 (¶34) (emphasis added). Because we find nothing to show that the disclosure of one's breast-cancer diagnosis and surgery would in fact "be highly offensive to a reasonable person[,]" we affirm the circuit court's grant of a directed verdict on this issue.[6]

### c.      Intentional Infliction of Emotional Distress

¶32.    Mark also asserts the circuit court erred by granting a directed verdict to the Mayor and the City Council on her claim of intentional infliction of emotional distress. To prevail on such a claim, "the severity of the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Weible*, 89 So. 3d at 64 (¶41) (internal quotation mark omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Id.* at 65 (¶41) (quoting *Brown v. Inter-City Fed. Bank for Sav.*, 738 So. 2d 262, 265 (¶9) (Miss. Ct. App. 1999)).

¶33.    Because the Mayor transferred Mark from her position as municipal-court clerk to another position with a lower salary, the circuit court viewed the transfer as a demotion that

---

[6] We further note that, even if Mark intended to keep her medical condition relatively private, the record reflects that she was placed on a church prayer list immediately following her surgery and that other City employees, including the Mayor, learned of her diagnosis and surgery. In fact, in his various letters to Mark about scheduling an appointment to address her grievance, the Mayor extended his sympathy for Mark's diagnosis and his wishes for her recovery.

brought Mark's claim into the employment realm. Although Mark claimed that, for over six months, the Appellees acted in an "incessant, continuous, and unrelenting" "pattern of conduct" that devastated her, Mark agreed on cross-examination that she never sought or received medical treatment related to the Appellees' alleged conduct. Mark also agreed that the Mayor and the City Council never said or did anything negative to her directly and that she only based her information on what she saw in the media. After considering the evidence and testimony, the circuit court found no proof of a pattern of deliberate and repeated harassment. According to the circuit court, there was no "evidence whatsoever that any conduct by any [Appellee] was so extreme in degree as to be beyond all possible bounds of decency" or to be "atrocious and utterly intolerable." Even viewing the evidence in the light most favorable to Mark, we can find no evidence to support her claim of intentional infliction of emotional distress. As a result, we affirm the circuit court's grant of a directed verdict on this issue.

**CONCLUSION**

¶34.    Because we find no error in the circuit court's grant of summary judgment to the City and grant of a directed verdict to the Mayor and the City Council, we affirm.

¶35.    **AFFIRMED.**

**GRIFFIS, C.J., BARNES AND CARLTON, P.JJ., AND GREENLEE, J., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**